## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE KIA AND HYUNDAI ENGINE LITIGATION | MDL DOCKET NO. 2898<br><br>**Oral Argument Requested** |

### *MUSGRAVE* PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407

Plaintiffs Rick Musgrave, David Krakauer, Jonathan Raiskin, and Alexis Salvadore ("the *Musgrave* Plaintiffs"), the plaintiffs in *Musgrave, et al. v. Hyundai Motor America, Inc., et al.*, N.D. Cal. Case No. 4:18-cv-07313-YGR, respectfully submit this reply brief in support of their motion for transfer and coordination or consolidation.

The primary argument advanced by Defendants and Plaintiffs in *In re Hyundai and Kia Engine Litigation* ("*In re Hyundai & Kia*") is that there is no need for transfer and consolidation because they have already reached "a near global" settlement that will resolve many of the claims in the subject cases. Defendants' Opp'n Br. (Doc. No. 34) at 1. "To the extent the pending settlement does not resolve *all aspects of the subject cases*," Defendants argue, any remaining claims are too disparate to support consolidation and transfer. *Id.* at 1 (emphasis added), 8. There are three problems with that position.

First, the fact that Defendants and Plaintiffs in *In re Hyundai and Kia* are purporting to settle "all" or nearly all of the fire-based claims confirms there is substantial overlap among the various cases. Otherwise, there would be no basis to settle the claims in the first place.

Second, transfer and consolidation or coordination also is necessary to ensure the "just and efficient conduct" of the actions. 28 U.S.C. § 1407(a). It is evident from the parties' briefing that *In re Hyundai & Kia* was never intended to be a fire case. Instead, as explained more fully below, the opposition briefs confirm that the settlement of the fire claims was belatedly shoe-horned into an existing settlement in response to fire-related claims that began to be filed in late 2018. As Defendants describe in their own brief, the Plaintiffs in *In re Hyundai & Kia* "contend a purported manufacturing defect restricts oil flow throughout the connecting rod bearings to other parts of the engine, which can result in stalling and eventually engine failure." Defendants' Oppn. Brf., at 2. The *In re Hyundai & Kia* action followed from an earlier

action (*Mendoza*), involving the "same defect" relating to "engine oil contamination and catastrophic engine failure." *In re Hyundai & Kia* Plaintiffs' Opp'n Br. (Doc. No. 35) at 5; Defendants' Opp'n Br. at 4 (describing *Mendoza* action).

During a mediation on December 21, 2018, the parties in *In re Hyundai & Kia* reached "an agreement in principle" and signed a settlement term sheet. Defendants' Opp'n Br. at 4. The parties in *In re Hyundai and Kia* emphasize that they had been negotiating settlement and conducting informal discovery for years, but offer no details as to the nature and extent of that discovery. In any event, to the extent that discovery was conducted prior to November 2018, it all would have concerned the oil contamination and engine seizure allegations rather than the cause(s) of the engine fires.

That is because the fire cases began to be filed just before the December 2018 mediation, and continued to be filed afterwards. *See id.* at 5 (listing timeline of fire cases). Defendants note that plaintiffs in one of the fire-related cases, *Flaherty*, "requested certain modifications to the settlement term sheet" that had been signed at the earlier mediation. *Id.* at 10. According to Defendants, the "proposed settlement is [therefore] the result of extensive, mediated negotiations among defendants, interim class counsel in *In re Hyundai and Kia*, and *Flaherty* counsel." *Id.* at 12. But *Flaherty* was filed on December 14, 2018 – a mere 7 days before the December 21, 2018 mediation. Given that *Flaherty* had just been filed at that time, and *In re Hyundai and Kia* did not otherwise concern fires, there is no way the "certain modifications to the settlement term sheet" requested by the *Flaherty* counsel were the result of years of negotiation and discovery about the fires. Rather, it appears that the modifications were tacked-on to the existing settlement term sheet in order to award Defendants a "near global" release for defects that had led to a horrific rash of fires, several fire-related class actions, and scrutiny from the federal

2

government.  *See Musgrave* Plaintiffs' Opening Br. (Doc. 1-1) at 5-7.  That is not a "just and efficient" resolution of fire-related claims.

Leaving aside the adequacy of the settlement as it relates to the fires, the arguments raised by Defendants and the plaintiffs in *In re Hyundai & Kia* are misplaced, as their arguments rest on authority in which centralization was denied when a settlement would extinguish other identical claims, and parties not involved in the settlement would have the opportunity to object or use other means to combat the proposed settlement.  *See* Defendants' Opp'n Br. (Doc. No. 34) at 11.  Notwithstanding the substantial factual overlap of these cases, the purported "global" settlement would not, in fact, cover all of the identified class vehicles.  *See id.* at 7-8.  As such, even if the pending settlement were to be approved, the remaining parties would still benefit from centralization.  *See* <u>In re Armored Car Antitrust Litig.</u>, 462 F. Supp. 394, 396 (J.P.M.L. 1978) (explaining that while the Panel had a "desire to minimize the overall expenses in this litigation, we are confident that all current parties, and all parties remaining if any settlement is approved, can experience a net savings of time, effort and expense by participation in Section 1407 proceedings"); *see also* <u>In re Managed Care Litig.</u>, 246 F. Supp. 2d 1363, 1365 (J.P.M.L. 2003) (collecting cases and granting transfer pursuant to § 1407 in spite of impending settlement where the settlement would only partially resolve the claims).

<u>Third</u>, also lacking merit is Defendants' argument that any fire-related claims that may survive settlement are too disparate to support transfer and consolidation.  As a preliminary matter, the argument assumes Judge Staton will approve a "near global" settlement of the fire-related claims under the circumstances presented here, but there is no certainty about that.  Whatever the outcome, however, transfer and consolidation would still be warranted.  By its plain terms, transfer for coordination or consolidation is proper under 28 U.S.C. § 1407(a) when

there are "one or more common questions of fact." That requirement is satisfied here because in each case the cause (or causes) of the fires are the central issue in dispute, and plaintiffs in each case will seek discovery and retain experts on that issue. The fact that different plaintiffs have different theories about the cause of the fires is not dispositive because if discovery points to one cause over another, or links certain causes to certain vehicles, then plaintiffs will presumably amend their complaints to conform to the evidence uncovered. Hence, centralization will "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liability Litig.*, 254 F. Supp. 3d 1381, 1382 (J.P.M.L. 2017).

Relatedly, the *Short* plaintiffs argue that their case concerns different defects than those alleged in *Musgrave* and the other actions. However, the common nucleus of fact that warrants transfer for coordinated or consolidated proceedings is that there is a defect or set of defects in Hyundai and Kia GDI engines that result in engine failure. Indeed, there are overlapping class vehicles in both the *Short* and *Musgrave* actions, to wit the 2012-2015 Kia Soul. Moreover, both actions allege that a defect has caused spontaneous engine fires in the affected vehicles. While the cases may point to different alleged defects as the cause of those fires, coordination or consolidation would still provide efficiencies in streamlining discovery and motion practice. Regardless, coordination or consolidation is still warranted because – as the *Short* plaintiffs correctly state – the district judge to whom the matter is assigned may elect to place any individualized aspects of the *Short* action (or those of any of the other actions), if any, on a separate track. *See In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651, 655 (J.P.M.L. 1981) ("The transferee judge, of course, has the authority to schedule discovery and other pretrial proceedings on any issues unique to a particular action or party to proceed

in separate tracks concurrently with the common pretrial proceedings, thus enhancing the efficient conduct of all aspects of this litigation."). Given that Judge Staton is already familiar with and overseeing some of the scheduled actions, coordination or consolidation of each of the listed actions is appropriate.

Dated: May 22, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: ___*/s/ Frederick J. Klorczyk III*___
       Frederick J. Klorczyk III

Joel D. Smith
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: jsmith@bursor.com
      fklorczyk@bursor.com

*Attorneys for Plaintiffs Rick Musgrave, David Krakauer, Jonathan Raiskin, and Alexis Salvadore*