# Exhibit A

ACCO,(JDEx),DISCOVERY,MANADR,RELATED-G

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA (Southern Division - Santa Ana)
## CIVIL DOCKET FOR CASE #: 8:19-cv-01069-JLS-JDE

Inez Elliston et al v. Hyundai Motor Company et al      Date Filed: 05/29/2019
Assigned to: Judge Josephine L. Staton      Jury Demand: Plaintiff
Referred to: Magistrate Judge John D. Early      Nature of Suit: 190 Contract: Other
Related Case: 8:17-cv-00838-JLS-JDE      Jurisdiction: Diversity
Cause: 28:1332 Diversity-Motor Vehicle Product Liability

**Plaintiff**

**Inez Elliston**        represented by    **Richard D McCune**
*on behalf of themselves and all others*        McCune Wright Arevalo LLP
*similarly situated*        3281 East Guasti Road Suite 100
       Ontario, CA 91761
       909-557-1250
       Fax: 909-557-1275
       Email: rdm@mccunewright.com
       *LEAD ATTORNEY*
       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Matthew Raasch**        represented by    **Richard D McCune**
*on behalf of themselves and all others*        (See above for address)
*similarly situated*        *LEAD ATTORNEY*
       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Latoya Taylor**        represented by    **Richard D McCune**
*on behalf of themselves and all others*        (See above for address)
*similarly situated*        *LEAD ATTORNEY*
       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tasha Gill**        represented by    **Richard D McCune**
*on behalf of themselves and all others*        (See above for address)
*similarly situated*        *LEAD ATTORNEY*
       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Greg Cohen**        represented by    **Richard D McCune**
*on behalf of themselves and all others*        (See above for address)
*similarly situated*        *LEAD ATTORNEY*
       *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Margaret Greenwalt**        represented by    **Richard D McCune**
*on behalf of themselves and all others*        (See above for address)
*similarly situated*

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Dimitra Bertsos**        represented by    **Richard D McCune**
*on behalf of themselves and all others*       (See above for address)
*similarly situated*                       *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jerry Stanwick**        represented by    **Richard D McCune**
*on behalf of themselves and all others*       (See above for address)
*similarly situated*                       *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Stephanie Cooper**        represented by    **Richard D McCune**
*on behalf of themselves and all others*       (See above for address)
*similarly situated*                       *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Chris Hazelwood**        represented by    **Richard D McCune**
*on behalf of themselves and all others*       (See above for address)
*similarly situated*                       *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**David Feurstein**        represented by    **Richard D McCune**
*on behalf of themselves and all others*       (See above for address)
*similarly situated*                       *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Fabian Conant**        represented by    **Richard D McCune**
*on behalf of themselves and all others*       (See above for address)
*similarly situated*                       *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wayne Robertson**        represented by    **Richard D McCune**
*on behalf of themselves and all others*       (See above for address)
*similarly situated*                       *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Johnathan Wilson**        represented by    **Richard D McCune**
*on behalf of themselves and all others*       (See above for address)
*similarly situated*                       *LEAD ATTORNEY*
                                     *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Gary Bolduc**
*on behalf of themselves and all others
similarly situated*

represented by **Richard D McCune**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Tanesha Cherry**
*on behalf of themselves and all others
similarly situated*

represented by **Richard D McCune**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Latonya Franklin**
*on behalf of themselves and all others
similarly situated*

represented by **Richard D McCune**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Wendy Moore**
*on behalf of themselves and all others
similarly situated*

represented by **Richard D McCune**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Samantha Bitely**
*on behalf of themselves and all others
similarly situated*

represented by **Richard D McCune**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Hyundai Motor Company**

**Defendant**

**Hyundai Motor America**

**Defendant**

**Kia Motors Corporation**

**Defendant**

**Kia Motors America, Inc.**

**Defendant**

**Does**
*1 through 50, inclusive*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/05/2019 | 11 | INITIAL STANDING ORDER FOR CASES ASSIGNED TO JUDGE JOSEPHINE L. STATON (tg) (Entered: 06/05/2019) |

| | | |
|---|---|---|
| 06/04/2019 | 10 | ORDER RE TRANSFER PURSUANT TO GENERAL ORDER 19-03-Related Case-filed. Related Case No: 8:17-cv-00838 JLS(JDEx). Case transferred from Judge John A. Kronstadt and Magistrate Judge Suzanne H. Segal to Judge Josephine L. Staton and Magistrate Judge John D. Early for all further proceedings. The case number will now reflect the initials of the transferee Judge 8:19-cv-01069 JLS(JDEx). Signed by Judge Josephine L. Staton (rn) (Entered: 06/04/2019) |
| 05/31/2019 | 9 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Leigh M Perica. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (ghap) (Entered: 05/31/2019) |
| 05/31/2019 | 8 | NOTICE OF PRO HAC VICE APPLICATION DUE for Non-Resident Attorney Derek Y Brandt. A document recently filed in this case lists you as an out-of-state attorney of record. However, the Court has not been able to locate any record that you are admitted to the Bar of this Court, and you have not filed an application to appear Pro Hac Vice in this case. Accordingly, within 5 business days of the date of this notice, you must either (1) have your local counsel file an application to appear Pro Hac Vice (Form G-64) and pay the applicable fee, or (2) complete the next section of this form and return it to the court at cacd_attyadm@cacd.uscourts.gov. You have been removed as counsel of record from the docket in this case, and you will not be added back to the docket until your Pro Hac Vice status has been resolved. (ghap) (Entered: 05/31/2019) |
| 05/31/2019 | 7 | NOTICE TO PARTIES OF COURT-DIRECTED ADR PROGRAM filed. (ghap) (Entered: 05/31/2019) |
| 05/31/2019 | 6 | NOTICE OF ASSIGNMENT to District Judge John A. Kronstadt and Magistrate Judge Suzanne H. Segal. (ghap) (Entered: 05/31/2019) |
| 05/31/2019 | 5 | NOTICE RE INTRA-DISTRICT TRANSFER by Clerk of Court due to incorrect intra-district venue selected by the filer. Case is transferred to the Southern Division. Case has been assigned to Judge John A. Kronstadt for all further proceedings. Any matters that may be referred to a Magistrate Judge are assigned to Suzanne H. Segal. New Case Number 8:19-cv-1069 JAK (SSx). (ghap) (Entered: 05/31/2019) |
| 05/29/2019 | 4 | *CERTIFICATION AND* NOTICE of Interested Parties filed by Plaintiff Dimitra Bertsos, Samantha Bitely, Gary Bolduc, Tanesha Cherry, Greg Cohen, Fabian Conant, Stephanie Cooper, Inez Elliston, David Feurstein, Latonya Franklin, Tasha Gill, Margaret Greenwalt, Chris Hazelwood, Wendy Moore, Matthew Raasch, Wayne Robertson, Jerry Stanwick, Latoya Taylor, Johnathan Wilson, (Attachments: # 1 Exhibit Addendum to Certification and Ntc of Interested Parties)(McCune, Richard) (Entered: 05/29/2019) |
| 05/29/2019 | 3 | AMENDED CIVIL COVER SHEET filed by Plaintiffs Dimitra Bertsos, Samantha Bitely, Gary Bolduc, Tanesha Cherry, Greg Cohen, Fabian Conant, Stephanie Cooper, Inez Elliston, David Feurstein, Latonya Franklin, Tasha Gill, Margaret Greenwalt, Chris Hazelwood, Wendy Moore, Matthew Raasch, Wayne Robertson, Jerry Stanwick, Latoya Taylor, Johnathan Wilson. (McCune, Richard) (Entered: 05/29/2019) |
| 05/29/2019 | 2 | CIVIL COVER SHEET filed by Plaintiffs Dimitra Bertsos, Samantha Bitely, Gary Bolduc, Tanesha Cherry, Greg Cohen, Fabian Conant, Stephanie Cooper, Inez Elliston, David Feurstein, Latonya Franklin, Tasha Gill, Margaret Greenwalt, Chris Hazelwood, Wendy |

| | | |
|---|---|---|
| | | Moore, Matthew Raasch, Wayne Robertson, Jerry Stanwick, Latoya Taylor, Johnathan Wilson. (McCune, Richard) (Entered: 05/29/2019) |
| 05/29/2019 | 1 | COMPLAINT Receipt No: 0973-23823598 - Fee: $400, filed by Plaintiff David Feurstein, Dimitra Bertsos, Matthew Raasch, Latonya Franklin, Inez Elliston, Wendy Moore, Wayne Robertson, Tanesha Cherry, Margaret Greenwalt, Latoya Taylor, Stephanie Cooper, Fabian Conant, Johnathan Wilson, Gary Bolduc, Jerry Stanwick, Tasha Gill, Samantha Bitely, Chris Hazelwood, Greg Cohen. (Attorney Richard D McCune added to party Dimitra Bertsos(pty:pla), Attorney Richard D McCune added to party Samantha Bitely(pty:pla), Attorney Richard D McCune added to party Gary Bolduc(pty:pla), Attorney Richard D McCune added to party Tanesha Cherry(pty:pla), Attorney Richard D McCune added to party Greg Cohen(pty:pla), Attorney Richard D McCune added to party Fabian Conant(pty:pla), Attorney Richard D McCune added to party Stephanie Cooper(pty:pla), Attorney Richard D McCune added to party Inez Elliston(pty:pla), Attorney Richard D McCune added to party David Feurstein(pty:pla), Attorney Richard D McCune added to party Latonya Franklin(pty:pla), Attorney Richard D McCune added to party Tasha Gill(pty:pla), Attorney Richard D McCune added to party Margaret Greenwalt(pty:pla), Attorney Richard D McCune added to party Chris Hazelwood(pty:pla), Attorney Richard D McCune added to party Wendy Moore(pty:pla), Attorney Richard D McCune added to party Matthew Raasch(pty:pla), Attorney Richard D McCune added to party Wayne Robertson(pty:pla), Attorney Richard D McCune added to party Jerry Stanwick(pty:pla), Attorney Richard D McCune added to party Latoya Taylor(pty:pla), Attorney Richard D McCune added to party Johnathan Wilson(pty:pla))(McCune, Richard) (Entered: 05/29/2019) |

### PACER Service Center

#### Transaction Receipt

06/06/2019 09:12:33

| PACER Login: | mccunewright34:3214621:0 | Client Code: | |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 8:19-cv-01069-JLS-JDE End date: 6/6/2019 |
| Billable Pages: | 6 | Cost: | 0.60 |

1  Richard D. McCune (State Bar No. 132124)
2  rdm@mccunewright.com
   **McCune Wright Arevalo, LLP**
3  3281 East Guasti Road, Suite 100
4  Ontario, California 91761
   Telephone: (909) 557-1250
5  Facsimile: (909) 557-1275

6
7  Derek Y. Brandt (*Pro Hac Vice* to be filed*)*
   dyb@mccunewright.com
8  Leigh M. Perica (*Pro Hac Vice* to be filed*)*
9  lmp@mccunewright.com
   **McCune Wright Arevalo, LLP**
10 101 W. Vandalia Street, Suite 200
11 Edwardsville, IL 62025
   Telephone: (618) 307-6116
12 Facsimile: 618-307-6161

13
14 Attorneys for Plaintiffs

15             **UNITED STATES DISTRICT COURT**
16        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

17

| | |
|---|---|
| 18 INEZ ELLISTON, | Case No.: 2:19-cv-04684 |
| 19 MATTHEW RAASCH, | |
| LATOYA TAYLOR, | |
| 20 TASHA GILL, | |
| 21 GREG COHEN, | **CLASS ACTION COMPLAINT AND** |
| MARGARET GREENWALT, | **DEMAND FOR JURY TRIAL** |
| 22 DIMITRA BERTSOS, | |
| 23 JERRY STANWICK, | 1. Violation of Cal. Civil Code § 1750 |
| STEPHANIE COOPER, | *et seq.;* |
| 24 CHRIS HAZELWOOD, | 2. Violation of California Bus. & Prof. |
| 25 DAVID FEURSTEIN, | Code §§ 17500, *et seq.;* |
| FABIAN CONANT, | 3. Violation of Cal. Bus. & Prof. Code |
| 26 WAYNE ROBERTSON, | § 17200, *et seq.;* |
| 27 JOHNATHAN WILSON, | 4. Violation of Cal. Civ. Code § 1791, |
| 28 GARY BOLDUC, | *et seq.;* |

TANESHA CHERRY,
LATONYA FRANKLIN,
WENDY MOORE and
SAMANTHA BITELY, on behalf
of themselves and all others
similarly situated,

Plaintiffs,

        v.

HYUNDAI MOTOR COMPANY,
HYUNDAI MOTOR AMERICA,
KIA MOTORS CORPORATION,
and KIA MOTORS AMERICA,
INC., and DOES 1 through 50,
inclusive,

Defendants.

5. Violation of Fl. Deceptive and Unfair Trade Practices Act;
6. Violation of Georgia Uniform Deceptive Trade Practices Act;
7. Violation of Indiana Deceptive Consumer Sales Act;
8. Violation of Iowa Private Rights of Action for Consumer Frauds Act;
9. Violation of Louisiana Unfair Trade Practices and Consumer Protection Law;
10. Violation of Mass. Deceptive Practices Act;
11. Violation of New Jersey Consumer Fraud Act;
12. Violation of New Mexico Unfair Practices Act.
13. Violation of New York General Business Law;
14. Violation of North Carolina Deceptive & Unfair Trade Practices Act;
15. Violation of Tennessee Consumer Protection Act;
16. Violation of Texas Deceptive Trade Practices Act.

NOW COME Plaintiffs Tasha Gill, Inez Elliston, Matthew Raasch, Greg Cohen, Stephanie Cooper, Dimitra Bertsos, Johnathan Wilson, Samantha Bitely, Tanesha Cherry, Wayne Robertson, Gary Bolduc, David Feuerstein, Fabian Conant, Margaret Greenwalt, LaTonya Franklin, Chris Hazelwood, LaToya Taylor, Wendy Moore, Jerry Stanwick (herein after "Plaintiffs"), on behalf of themselves and all others similarly situated, with knowledge as to their own actions and events, and upon information and belief as to other matters, allege as follows:

# I

## NATURE OF THE ACTION

1. Several of the most popular vehicle models from Defendants collectively referred to as "Hyundai"— Hyundai Motor Company and Hyundai Motor America, Inc., and "Kia"— Kia Motors Corporation and Kia Motors America, Inc.— suffer from potentially catastrophic engine defects leading to spontaneous engine fires or sudden engine stalls while in motion. These engine defects pose a risk of accidents, bodily injury or death for both drivers and passengers, and extensive vehicle damage. According to the National Highway Traffic Safety Administration (NHTSA), engine failure and fire problems have affected more than 6 million Hyundai and Kia vehicles since 2015 and continue to affect Hyundai and Kia Vehicles to this day.

2. To benefit the bottom line, Hyundai and Kia have been concealing the serious engine defects in its popular vehicle models equipped with gasoline direct-injection ("GDI") engines. GDI engines were first introduced to the U.S. market in 2009. In recent years, there have been widespread reports of Kia and Hyundai vehicles, equipped with a GDI engine, bursting into flames. Hyundai and Kia have also documented more than 3125 fire-related incidents that were not sparked by a collision, and consumer complaints of melted wires in the engine bay, engine smoke, rattling metal noises and burning odors

emanating.[1] Potentially at risk are any: 2011-2019 Hyundai Sonata, 2013-2019 Hyundai Santa Fe and Santa Fe Sport, 2011-2019 Kia Optima and Kia Sportage, and 2012-2019 Kia Sorento or Kia Soul (hereinafter referred to as "Class Vehicles") with 2.0-liter or 2.4-liter engines, many of which were subject to inadequate recalls in 2015 and 2017.[2]

3. Federal prosecutors have since launched a criminal investigation into Hyundai and Kia to determine if the vehicle recalls had been conducted properly.[3] However, numerous at-risk Hyundai and Kia vehicles are still on the road. Following thousands of reported fires, more than 103 injuries, and one recorded fatality involving Kia and Hyundai vehicles, federal officials called for an NHTSA investigation into the non-collision fires.[4] In April 2019, NHTSA launched its formal investigation into fires in five Hyundai and Kia vehicle models: 2011-2014 Hyundai Sonata and Santa Fe, the 2011-2014 Kia Optima and Sorento, and the 2010-2015 Kia Soul.[5] A group of U.S. states are also investigating

---

[1] Francesca Paris, *Federal Auto Regulator To Investigate Hyundai, Kia Vehicle Fires* (April 2, 2019), NPR, available at https://www.npr.org/2019/04/02/708986625/federal-auto-regulator-to-investigate-hyundai-kia-vehicle-fires (last accessed April 16, 2019)

[2] Clifford Athiyeh, *Hyundai and Kia Recall 1.2 Million Cars for Engine Failures* (April 7, 2017), Car and Driver, available at https://www.caranddriver.com/news/a15342058/hyundai-and-kia-recall-1-2-million-cars-for-engine-failures/ (last accessed April 16, 2019); Alexander Stoklosa, *Hyundai Recalling 569,500 Sonatas, Accents Over Separate Defects*, (September 25, 2015), Car and Driver, available at https://www.caranddriver.com/news/a15352202/hyundai-recalling-569500-sonatas-accents-over-separate-defects/ (last accessed April 16, 2019)

[3] David Shepardson, *U.S. to probe thousands of fires connected to Hyundai, Kia vehicles,* Reuters, available at https://www.reuters.com/article/us-hyundai-motor-probe/u-s-to-probe-thousands-of-fires-connected-to-hyundai-kia-vehicles-idUSKCN1RD2P4 (last accessed April 12, 2019)

[4] Jeff Plungis, *Hyundai and Kia Models Suffer Alarming Number of Fires, Watchdog Group Says* (June 13, 2018), Consumer Reports, available at https://www.consumerreports.org/car-recalls-defects/hyundai-and-kia-fires-center-for-auto-safety/ (last accessed April 16, 2019)

[5] *NHTSA Safety Defect/Noncompliance Notices Received During February 2019* (April 4, 2019), available at https://www.odi.nhtsa.dot.gov/downloads/monthlyReports/rcl/RCLMTY-022019-1234.pdf (last accessed April 12, 2019); *ODI Resume-2011-2014 Kia Optima and Sorento; and 2010-2015 Kia Soul* (Mar. 29, 2019), available at https://static.nhtsa.gov/odi/inv/2019/INOA-PE19004-4727.PDF (last accessed April 12, 2019); *ODI Resume- 2011-2014 Hyundai Sonata and Santa Fe* (Mar. 29, 2019), available at https://static.nhtsa.gov/odi/inv/2019/INOA-PE19003-2613.PDF (last accessed April 12, 2019).

Hyundai and Kia for unfair and deceptive acts related to the non-collision fires.[6] The investigations do not stop at the United States border. South Korean prosecutors are also conducting investigations into the automakers over its engine recalls.

4.    Simply put, Hyundai and Kia should have acted to recall these vehicles far earlier. Not only do the numerous investigations, publications, consumer complaints and internet postings put Hyundai and Kia on notice of the engine defect and fire risk,  Hyundai and Kia concealed from consumers the defects and related safety hazards, thus misleading and inducing consumers to purchase vehicles.

5.    The catastrophic engine failure and fire risk is the direct result of defects known to, concealed by, and unremedied by both Hyundai and Kia. As a result of these defects, the putative class is exposed to an unreasonable risk of injury or death if their vehicle's engine fails while in operation, let alone if the vehicle's engine spontaneously ignites or smokes. The engine defects also expose passengers and drivers, including rideshares, on the road to an unreasonable and increased risk of accident, injury, or death.

6.    Therefore, Plaintiffs, for themselves and all others similarly situated, bring this action for reimbursement requiring Hyundai and Kia to repair and/or buy back all Class Vehicles, make whole all class members for all costs, inconveniences and economic losses associated therewith, and damages in an amount to be determined at trial, pursuant to the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*; Unfair Business Practices Act, California Business & Professions Code § 17200, *et seq.*; and Song-Beverly Act, §§ 1792, 1791.1, *et seq.*; and other applicable state laws described herein.

///

///

---

[6] David Shepardson, *U.S. to probe thousands of fires connected to Hyundai, Kia vehicles,* Reuters, available at https://www.reuters.com/article/us-hyundai-motor-probe/u-s-to-probe-thousands-of-fires-connected-to-hyundai-kia-vehicles-idUSKCN1RD2P4 (last accessed April 12, 2019)

## II

## PARTIES

**A.     Plaintiffs**

7.     Plaintiff and proposed Nationwide and California State Class Representative, Inez Elliston, is a citizen of the State of California currently residing in Fresno, CA. Ms. Elliston  purchased a new 2014 Kia Sorrento from a Kia dealership in Sacramento, CA. Plaintiff still owns this vehicle, which is used for personal, family and/or household uses. The vehicle has since required an engine replacement in 2017 relating to the Engine Defect.

8.     Plaintiff and proposed Nationwide and California State Class Representative, Matthew Raasch, is a citizen of the State of California currently residing in San Francisco, CA. Mr. Raasch purchased a new 2011 Kia Optima from a Kia dealership in Las Vegas, Nevada. Plaintiff Raasch still owns this vehicle, which is used for personal, family and/or household uses.

9.     Plaintiff and proposed Nationwide and Florida State Class Representative, LaToya Taylor, is a citizen of the State of Florida currently residing in Sarasota, FL. Ms. Taylor purchased a used 2013 Kia Optima SXL, which she still owns, and uses for personal, family and/or household uses. Since purchasing the Vehicle, it has required two engine replacements and multiple recalls relating to the Engine Defect.

10.     Plaintiff and proposed Nationwide and Florida State Class Representative, Greg Cohen, is a citizen of the State of Florida currently residing in Aventura, FL. Mr. Cohen purchased a used 2012 Hyundai Sonata, which he still owns, and uses for personal, family and/or household uses.

11.     Plaintiff and proposed Nationwide and Georgia State Class Representative, Margaret Greenwalt, is a citizen of the State of Georgia currently residing in Douglasville, GA. Ms. Greenwalt purchased a used 2011 Kia Sorento, which she still owns, and uses for personal, family and/or household uses. The vehicle has since required multiple engine repairs relating to the Engine Defect.

CLASS ACTION COMPLAINT

12.     Plaintiff and proposed Nationwide and Indiana State Class Representative, Dimitra Bertsos, is a citizen of the State of Indiana currently residing in Schererville, IN. Ms. Bertsos purchased a used 2013 Kia Optima, which she still owns, and uses for personal, family and/or household uses. The vehicle has since required two engine replacements and been subject to recalls relating to the Engine Defect.

13.     Plaintiff and proposed Nationwide and Iowa State Class Representative, Jerry Stanwick, is a citizen of the State of Iowa currently residing in Sloan, IA. Mr. Stanwick purchased a new 2013 Kia Optima from Billion Kia of Sioux City, Iowa, which he still owns, and uses for personal, family and/or household uses. The vehicle has since required an engine replacement following catastrophic engine failure.

14.     Plaintiff and proposed Nationwide and Louisiana State Class Representative, Stephanie Cooper, is a citizen of the State of Louisiana currently residing in Saint James, LA. Ms. Cooper purchased a used 2013 Kia Sorento, which she still owns, and uses for personal, family and/or household uses. Ms. Cooper was in the Vehicle when the engine burst into flames.

15.     Plaintiff and proposed Nationwide and Massachusetts State Class Representative, Chris Hazelwood, is a citizen of the State of Massachusetts currently residing in Chelmsford, MA. Mr. Hazelwood purchased a new 2014 Kia Sorento from York Kia of Medford, MA , which he still owns, and uses for personal, family and/or household uses.

16.     Plaintiff and proposed Nationwide and New Jersey State Class Representative, David Feuerstein, is a citizen of the State of New Jersey currently residing in Kearny, NJ. Mr. Feuerstein purchased a new 2013 Kia Optima SX from Gateway Kia of East Brunswick, NJ , which he still owns, and uses for personal, family and/or household uses. The vehicle has since required an engine replacement.

17.     Plaintiff and proposed Nationwide and New Mexico State Class Representative, Fabian Conant , is a citizen of the State of New Mexico currently residing

CLASS ACTION COMPLAINT

in Albuquerque, NM. Mr. Conant purchased a used 2013 Kia Optima SXL, which he still owns, and uses for personal, family and/or household uses.

18.     Plaintiff and proposed Nationwide and New York State Class Representative, Wayne Robertson, is a citizen of the State of New York currently residing in Piscataway, NY. Mr. Robertson purchased a used 2012 Kia Sorento, which she still owns, and uses for personal, family and/or household uses. The Vehicle has since been subject to multiple recalls, including those relating to the Engine Defect.

19.     Plaintiff and proposed Nationwide and New York State Class Representative, Jonathan Wilson, is a citizen of the State of New York currently residing in Otisville, NY. Mr. Wilson purchased a used 2011 Kia Optima, which he still owns, and uses for personal, family and/or household uses.

20.     Plaintiff and proposed Nationwide and North Carolina State Class Representative, Gary Bolduc, is a citizen of the State of North Carolina currently residing in Garner, NC. Mr. Bolduc purchased a new 2011 Kia Optima and a new 2012 Kia Sorento from Free Anderson Kia of Cary located in Raleigh, NC, both of which he still owns, and uses for personal, family and/or household uses.

21.     Plaintiff and proposed Nationwide and North Carolina State Class Representative, Tanesha Cherry, is a citizen of the State of North Carolina currently residing in Greenville, NC. Ms. Cherry purchased a used 2011 Kia Sorento SXL, which she still owns, and uses for personal, family and/or household uses.

22.     Plaintiff and proposed Nationwide and Tennessee State Class Representative, Latonya Franklin, is a citizen of the State of Tennessee currently residing in Memphis, TN. Ms. Franklin purchased a used 2011 Kia Optima, which she still owns, and uses for personal, family and/or household uses. The Vehicle has since been subject to multiple recalls, including those related to the Engine Defect.

23.     Plaintiff and proposed Nationwide and Tennessee State Class Representative, Wendy Moore, is a citizen of the State of Tennessee currently residing in Mulberry, TN. Ms. Moore purchased a used 2011 Kia Optima EX GDI, which she still owns, and uses for

personal, family and/or household uses. The vehicle has since required an engine replacement after seizing up on Plaintiff Moore.

24.     Plaintiff and proposed Nationwide and Texas State Class Representative, Samantha Bitely, is a citizen of the State of Texas currently residing in Houston, TX. Ms. Bitely purchased a used 2014 Kia Optima, which she still owns, and uses for personal, family and/or household uses.

25.     Plaintiff and proposed Nationwide and Texas State Class Representative, Tasha Gill, is a citizen of the State of Texas currently residing in Houston, TX. Ms. Gill purchased a new 2014 Kia Optima from Archer Kia of Houston, TX, which she still owns, and uses for personal, family and/or household uses. The Vehicle has since been subject to recalls relating to the Engine Defect.

**B.     Defendant HYUNDAI MOTOR COMPANY**

26.     Established in 1967, Defendant Hyundai Motor Company ("Hyundai Co.") is a South Korean multinational automaker headquartered in Seoul, South Korea. Hyundai Co. has grown to become one of the world's largest automakers and includes over two dozen auto-related subsidiaries and affiliates. Hyundai Co. is the parent corporation of Defendant Hyundai Motor America. Hyundai Co., together with Defendants Hyundai Motor America, Kia Motors Corporation, and Kia Motors America, Inc., comprise the Hyundai Motor Group, which manufactures the GDI engines at issue in this Complaint.

27.     Hyundai Co. is principally engaged in the manufacture and distribution of automobiles and automobile parts. Along with its subsidiaries, Hyundai Co. operates its business through three segments. The Vehicle Segment, Financial Segment, and Railway Segment. The Vehicle Segment manufactures automobiles mainly under the brand names of Genesis, Tucson, Equus, Veloster, Azera, Sonata, Elantra, Accent. The segment also provides automobile maintenance services and produces commercial vehicles including trucks, buses, special vehicles and others, in addition to automobile component parts.

CLASS ACTION COMPLAINT

**C.      Defendant HYUNDAI MOTOR AMERICA**

28.     Defendant Hyundai Motor America ("Hyundai America") is an automobile design, manufacturing, distribution, and/or service corporation incorporated and headquartered in the state of California with its principal place of business in Fountain Valley, California. Hyundai America primarily develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles, including the Hyundai Class Vehicles.

29.     Hyundai America is the American sales, marketing, and distribution arm of its parent company, Hyundai Co., overseeing sales and other operations across the United States. Hyundai America distributes and sells a complete line of Hyundai vehicles through more than 800 dealers throughout the United States. Money received from the purchase or lease of a Hyundai vehicle from a dealership flows from the dealer to Hyundai America and Hyundai Co. (together, "Hyundai").

30.     On information and belief, Defendant Hyundai America is responsible for the distribution, installation, service, repair and decisions regarding the GDI engines as they relate to the Engine Defect in the Hyundai Class Vehicles.

31.      On information and belief, Defendant Hyundai America developed the post-purchase owner's manuals, warranty booklets, and other information related to maintenance recommendations and/or schedules for the Hyundai Class Vehicles.

32.     Hyundai America engages in continuous and substantial business in California.

**D. Defendant KIA MOTORS CORPORATION**

33.     Defendant Kia Motors Corporation ("Kia Corp.") is a South Korean multinational automaker headquartered in Seoul, South Korea. Kia Corp. is principally engaged in the manufacture and distribution of automobiles. Kia Corp.'s products include passenger vehicles, recreational vehicles, taxi/bus/commercial vehicles as well as hybrid

vehicles under the brand names of Cadenza, Forte, Forte Koup, Forte 5, K900, Optima, Optima Hybrid, Rio, Rio 5-door, Soul, Sedona, Sorento, Sportage and others.

34. The Company also engaged in the manufacture of automobile components, as well as prevision of rental and maintenance services. The Company distributes its products within domestic market and to overseas markets, such as North America, Europe and other Asian countries.

35. Kia Corp. is the parent corporation of Kia Motors America, Inc. As of April 2019, Defendant Kia Corp.'s largest shareholder is Hyundai Co., which holds 33.88 percent of Kia Corp.'s stock.

**E. Defendant KIA MOTORS America, Inc.**

36. Defendant Kia Motors America, Inc. ("Kia America") is an automobile design, manufacturing, distribution, and/or service corporation doing business within the United States. Kia America designs, develops, manufactures, distributes, markets, sells, leases, warrants, services, and repairs passenger vehicles, including the Kia Class Vehicles.

37. Kia America is incorporated and headquartered in the state of California with its principal place of business at 111 Peters Canyon Road, Irvine, California 92606. Kia America serves as the American sales, marketing, and distribution arm of its parent company, Kia Corp., overseeing sales and other operations across the United States. Kia America distributes and sells a complete line of Kia vehicles through more than 755 dealers throughout the United States. Money received from the purchase or lease of a Kia vehicle from a dealership flows from the dealer to Kia America and Kia Corp (together, "Kia").

38. On information and belief, Defendant Kia America is responsible for the distribution, service, repair, installation, and decisions regarding the GDI engines as they relate to the Engine Defect in the Kia Class Vehicles.

39. On information and belief, Defendant Kia America developed the post-purchase owner's manuals, warranty booklets, and other information related to maintenance recommendations and/or schedules for the Kia Class Vehicles.

40.     Kia America engages in substantial and continuous business in the state of California.

41.     Doe Defendants 1 through 50 represent presently unknown designers, researchers, developers, manufacturers, marketers, distributers, promoters, suppliers and sellers of the Class Vehicles, which are defective and unreasonably dangerous.

## II

## JURISDICTION AND VENUE

42.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d)(2) and (6) because the putative class numbers 100, the aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs, and there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.This Court also has supplemental  jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

43.     This Court has personal jurisdiction over Defendants by virtue of them doing business in this Judicial District and because Defendants are headquartered in California. Defendants have also engaged in statutory violations within the State of California and this District.

44.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Defendants have conducted, and continue to conduct, business in this District, and a substantial part of the acts and omissions giving rise to the claims occurred, at least in part, within this District. Defendants are headquartered here, maintain a manufacturing plant here, market, advertise, and sell the affected vehicles here at Defendants' dealerships , and otherwise conducted extensive business, within this District, including benefitting from substantial revenue and profits from the sales and/or leases of Class Vehicles in this District.

1
2

## III

## FACTUAL ALLEGATIONS

3       45.    Hyundai and Kia manufactured and sold millions of vehicles equipped with

4   defective engines that create major safety concerns for owners, drivers and passengers of

5   Class Vehicles. Upon learning of these defects, Hyundai and Kia failed to remedy the

6   potentially fatal defects, and in fact, concealed the true nature of the engines and vehicles

7   from consumers for years—consumers who were driving and riding, and continue to drive

8   and ride in vehicles with a legitimate fear that their engine could fail on a busy road without

9   provocation or burst into flames in an instant.

10

11  **A. The Gasoline Direct Injection Engine ("GDI")**

12      46.    In 2009, Hyundai debuted the 2.4 Theta II GDI, its first Gasoline Direct

13  Injection engine in the United States.[7] The Theta II 2.4 GDI is a naturally aspirated 2.4-

14  liter gasoline direct-injection four-cylinder engine that made its first appearance in the 2011

15  Hyundai Sonata. The Theta II engines also included an option for a turbocharged 2.0-liter

16  model.  On information and belief, Hyundai used Theta II GDI engines in certain Sonata,

17  Santa Fe, and Santa Fe Sport vehicles, and Kia used these engines in certain Optima,

18  Sorento, and Sportage vehicles.[8]

19      47.    According to Hyundai, by precisely controlling the injection of fuel, GDI

20  allows for better fuel economy, increased power and reduced emissions from its vehicles.

21      48.    In 2010, Hyundai debuted another GDI engine, the "Gamma" 1.6-liter engine,

22  in its 2012 Accent. The Gamma 1.6L was, at the time of its introduction, the smallest

23
24
25  _____

26  [7] Miles Johnson, *Hyundai Develops Its First Gasoline Direct Injection Engine,* (November 17, 2009)
    Hyundai, available at https://www.hyundainews.com/en-us/releases/317 (last accessed April 14, 2019).
27  [8]Clifford Athiyeh, *Hyundai and Kia Recall 1.2 Million Cars for Engine Failures,* (April 4, 2017) Car and
    Driver, available at  https://www.caranddriver.com/news/a15342058/hyundai-and-kia-recall-1-2-million-
28  cars-for-engine-failures/ (last accessed April 14, 2019).

Hyundai engine to use GDI technology. On information and belief, Hyundai used Gamma GDI engines in certain Accents Veloster vehicles.[9]

49.     In 2012, Hyundai and Kia introduced their "Lambda II" engine lineup that included 3.0-liter, 3.3-liter, and turbocharged 3.3-liter GDI models. The previous Lambda engine allowed for up to 50° of cam phasing, but the Lambda II twin-turbo 3.3L is capable of up of 85° of phasing, allowing rapid valvetrain adjustments in response to throttle inputs. On information and belief, Hyundai used the Lambda II GDI engines in certain Genesis models,  Hyundai Palisade, Azera, Sonata, and Santa Fe vehicles, namely large SUVs and crossovers. Kia used the Lambda II GDI engines in certain  Sorento, Sedona, Cadenza, and Stinger models.

50.     Shortly thereafter, in 2013, Defendants introduced another GDI engine to its lineup, the "Nu" 2.0-liter model.  Although first introduced in a 1.8-liter size in 2010, the Nu GDI engine line expanded in 2012 to include the 2.0-liter version. On information and belief, Hyundai used the Nu 2.0-liter GDI engines in certain Elantra, Tucson, and Sonata Hybrid vehicles, and Kia used them in certain Soul vehicles.

**B. The GDI Engine Defect**

51.     Subsequent to the introduction of the GDI engine models described above, in 2015, Hyundai recalled 470,000 Sonata sedans equipped with the "Theta II" engine. The recall was initiated as a result of anticipated engine failures leading to stalled vehicles and an increased risk of  a crash. At that time, Kia did not recall any of its vehicles even though they included the same "Theta II" engines.

52.     In March 2017, less than two years later, Hyundai expanded its U.S. recall to 572,000 2013-2014 Hyundai Sonatas and the 2013-2014 Hyundai Santa Fe Sports, citing the same engine issues following additional engine complaints.[10] Kia also recalled 2011-

---

[9]  *Gamma 1.6-Liter GDI Engine,* Hyundai, available at .https://www.hyundainews.com/en-us/releases/1308 (last accessed April 17, 2019)
[10] Hyundai Recall 17V-226: https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V226-4558.pdf (last visited April. 20, 2019).

2014 Kia Optima, 2012-2014 Kia Sorento, and 2011-2013 Kia Sportage.[11] As of March 2017, Hyundai and Kia had recalled over 1.6 million vehicles in two recalls intended to address the catastrophic engine failure issue. [12] However, Hyundai and Kia failed to recall nearly three million vehicles with potentially defective engines that may catch fire since the discovery of the engine defects in 2015. In fact, the Highway Loss Data Institute, reported Kia and Hyundai vehicles with two-liter, turbocharged engines were more than three times more likely to catch fire than engines in any other similar-sized vehicle on U.S. roads. Yet, not all models with that engine have been recalled. [13]

53. The defect in the "Theta II" engines causes debris to be spewed from the engine resulting in prematurely worn bearings, engine seizures, and/or dislodged connecting rods that may puncture the engine block. This defect restricts oil flow to essential component parts of the engine, resulting in inadequate engine oil lubrication. Stalling may be triggered by the premature engine wear resulting from inadequate lubrication and restricted oil flow to the engine. Simply put, the defect damages the engine block, thus rendering the vehicles inoperable, and in many instances leading to engine fires.

54. Premature wear may result in a connecting rod breaking and puncturing a hole in the engine block, thus allowing oil to escape and encounter hot engine surfaces. This can ultimately cause a sudden engine fire rendering Class Vehicles inoperable.[14] In addition to extensive and costly damage to vehicle engines, their component parts, and in some cases, total loss of a Class Vehicle, the Engine Defect creates a serious driving hazard and increased likelihood of injury or death for drivers and passengers.

---

[11] Kia Recall 17V-224: https://static.nhtsa.gov/odi/rcl/2017/RCLRPT-17V224-7544.PDF (last visited April. 20, 2019)

[12] *Center for Auto Safety: Investigation needed into Kia and Hyundai for hundreds of car fires,* (February 27, 2019) Center for Auto Safety, available at https://www.autosafety.org/wp-content/uploads/2019/02/CAS-letter-to-Congress-on-Kia-Hyundai-fires-Final.pdf (last visited April 20, 2019).

[13] Jackie Callaway, *Study: Certain Kia and Hyundai engines more likely to catch fire*, (March 25, 2019),ABC Action News, https://www.abcactionnews.com/news/local-news/i-team-investigates-study-certain-kia-and-hyundai-engines-more-likely-to-catch-fire (last visited April 24, 2019).

[14] *Id.*

55.     Subsequent to the two previous engine recalls mentioned above, in January 2019, following additional consumer complaints, Hyundai issued a subsequent recall to inspect the fuel tube installation of approximately 100,000 of those more than 1 million 2011-2014 Hyundai Sonata and 2013-2014 Hyundai Santa Fe Sport vehicles whose engines were replaced under the previous two recalls.[15] Hyundai made clear that *only* vehicles that had engines replaced in the previous recalls are covered by the new recall.[16]

56.      Kia announced that it, too, would recall vehicles to inspect the high-pressure fuel pipe that may have been damaged, misaligned or improperly tightened while vehicle engines were being replaced under previous recalls. The damage can allow fuel to leak and hit hot engine parts, causing fires.

57.     Kia would recall the Soul small SUV due to fire and engine failure problems. However, the recent recalls are still insufficient to remedy the problem, given that Hyundai and Kia have yet to recall all vehicles at risk.

58.     On information and belief, the Class Vehicles are equipped with GDI engines of various models containing the Engine Defect, thus drastically increasing the likelihood of catastrophic engine failures and engine fires.

**C. Hyundai and Kia Failed to Efficiently Remedy the Known Engine Defects**

59.     Instead of presenting the public with a solution for the Engine Defect causing fires, or at the very least, a suitable explanation, or statement claiming responsibility for the continued sale of these defective engines, Hyundai and Kia had recalled fewer than 10% of the potential fire prone vehicles as of February 27, 2019.[17]

---

[15] *Hyundai Issues Recall and Engine Software Update for Certain Sonata and Santa Fe Sport Vehicles* (January 16, 2019) Hyundai, available at https://www.hyundainews.com/en-us/releases/2696 (last accessed April 14, 2019).

[16] Tom Krisher, *Hyundai, Kia recall vehicles due to increased fire risk* (January 16, 2019), Associated Press, available at https://apnews.com/8ac437d30fea4c97bd3058922d85f937 (last accessed April 24, 2019).

[17] *Center for Auto Safety: It is Time for Congress to Take Action on Kia and Hyundai Fires,* (February 27, 2019) Center for Auto Safety, available at https://www.autosafety.org/wp-content/uploads/2019/02/CAS-letter-to-Congress-on-Kia-Hyundai-fires-Final.pdf (last accessed April 18, 2019).

60.     In the Center for Auto Safety ("the Center") February 27, 2019 letter to Congress, the Center stated that "Kia and Hyundai are refusing to fix a potentially deadly problem with their vehicles, despite independent analysis confirming that this is not a common occurrence for other manufacturers."[18]

61.     By the end of February 2019, the Center reported "over 300 'non-collision' fires in just 5 makes and models of [Hyundai and Kia's] vehicles over a small period of time." [19]. The Center went on to warn that "these figures are far out of proportion with similar size and class vehicles made during the same period", ultimately leading the Center to call for Congressional action. The Center ultimately called for a full recall of all 2011-2014 Kia Optima, Kia Sorento, Kia Soul, Hyundai Sonata, and Hyundai Santa Fe, and all 2010-2015 Kia Souls—a total of almost 3 million vehicles— and petitioned NHTSA to open an investigation into the issue.

62.     The Highway Loss Data Institute also revealed that insurance claim records show that many more Kia and Hyundai vehicles are catching fire than have been reported to government regulators. Insurance records show more than 2,700 fires in just five models alone – 2011-2015 Kia Optima, 2011-2014 Hyundai Sonata, 2011-2015 Kia Sorento, 2011-2012 Hyundai Santa Fe and 2013-2014 Hyundai Santa Fe Sport.[20] Those numbers continue to rise.

63.     On April 1, 2019—based on the 300+ consumer complaints of Hyundai and Kia vehicles bursting into flames— NHTSA called for an investigation into the non-collision fires and the hundreds of further complaints noting melted wires in the engine

---

[18] *Id.*

[19] *Center for Auto Safety: It is Time for Congress to Take Action on Kia and Hyundai Fires,* (February 27, 2019) Center for Auto Safety, available at https://www.autosafety.org/wp-content/uploads/2019/02/CAS-letter-to-Congress-on-Kia-Hyundai-fires-Final.pdf (last accessed April 18, 2019).

[20] Jackie Callaway, *Study: Certain Kia and Hyundai engines more likely to catch fire*, (March 25, 2019),ABC Action News,  https://www.abcactionnews.com/news/local-news/i-team-investigates/study-certain-kia-and-hyundai-engines-more-likely-to-catch-fire (last visited April 24, 2019).

bay, engine smoke, and burning odors emanating from Hyundai and Kia vehicles. Hyundai and Kia remain under investigation by NHTSA for their alleged concealment of, and unhurriedness to fix, defective Hyundai and Kia vehicles, all the while consumers are left without recourse for their purchase or lease of those defective Class Vehicles.

## IV

## CLASS ACTION ALLEGATIONS

**A. Class Definitions**

64.     "Class Vehicles" include, but are not limited to:

a.  Hyundai

    i.  2011-2019 Hyundai Sonata

    ii.  2013-2019 Hyundai Santa Fe and Santa Fe Sport

    iii.  2011-2019 Kia Optima

    iv.  2012-2019 Kia Sorento

    v.  2012-2019 Kia Soul

    vi.  2011-2019 Kia Sportage.

65.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this class action individually and on behalf of the following proposed nationwide class of persons, initially defined as:

**Nationwide Class:**

All persons or entities who bought, leased,

or own a Class Vehicle in the United States.

66.     In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure 23(c)(5), Plaintiffs seek to represent the following state classes, if the Court declines to certify the Nationwide Class above. Specifically, the State Classes consist of the following:

**California State Class:**

All persons or entities who bought, leased, or

own a Class Vehicle in the State of California.

**Florida State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of Florida.

**Georgia State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of Georgia.

**Indiana State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of Indiana.

**Iowa State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of Iowa.

**Louisiana State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of Louisiana.

**Massachusetts State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of Massachusetts.

**New Jersey State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of New Jersey.

**New Mexico State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of New Mexico.

**New York State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of New York.

**North Carolina State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of North Carolina.

**Tennessee State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of Tennessee.

**Texas State Class:**

All persons or entities who bought, leased, or own a Class Vehicle in the State of Texas.

67.     Together, the Nationwide Class and the State Classes shall be collectively referred to herein as (the "Class").

68.     The Class and State Classes do not include Defendants; any affiliate, parent or subsidiary of Hyundai or Kia; any entity in which Hyundai or Kia have a controlling interest; any officer, director or employee of Hyundai or Kia; any successor or assign of Hyundai or Kia; Plaintiffs' counsel or anyone employed by Plaintiffs' counsel in this action and their immediate families; any judge to whom this case is assigned and any member of his/her immediate family and staff; governmental entities; or individuals who have personal injury claims as a result of conduct and/or defects alleged herein.

69.     Plaintiffs reserve the right to amend or supplement the Class descriptions with greater specificity or further division into subclasses or limitation to certain issues, after conducting discovery in this matter.

70.     Plaintiffs also reserve the right to amend or supplement the Class Vehicles after conducting discovery in this matter.

## B. Fed. R. Civ. P. 23 Class Certification Requirements

71. **Numerosity of the Class** – The members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe that there are over one million Class Vehicles nationwide, and many thousands of Affected Vehicles in each of the States mentioned above, based on the volume of sales and recalls of Class Vehicles. Disposition of the claims in a class action context will provide substantial benefits to the parties and the Court.

72. **Commonality and Predominance** – Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members, as is required by Fed. R. Civ. P. 23(a)(2) and (b)(3). These common questions include, but are not limited to:

   a. Whether Defendants engaged in the conduct alleged herein;

   b. Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

   c. Whether the Class Vehicles have and were sold with the defects alleged herein, and whether those defects constitute a safety defect;

   d. Whether a reasonable consumer would consider the defects alleged herein and/or their consequences material to the decision to purchase or lease a Class Vehicle;

   e. When Defendants discovered, knew, or should have known of the existence of the defects alleged herein;

   f. Whether Plaintiffs and the other Class members overpaid for their Class Vehicles as a result of the Engine Defects and Defendants' concealment thereof;

g.  Whether Defendants had a duty to disclose the true nature of the Class Vehicles to Plaintiffs and Class members;

h.  Whether Plaintiffs suffered out-of-pocket losses as a result of the defects alleged herein, and if so, how much;

i.  Whether Plaintiffs will suffer out-of-pocket losses as a result of the proposed recalls,  and if so, how much;

j.  Whether Plaintiffs and the other Putative Class members are entitled to damages and monetary relief and, if so, in what amount;

k.  Whether Defendants omitted, concealed, and/or failed to disclose material facts about the Class Vehicles;

l.  Whether Defendants' concealment of the true nature of the Class Vehicles would have induced a reasonable consumer to act to his or her detriment by purchasing and/or leasing the Class Vehicles;

m.  Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief

n.  Whether Plaintiffs and the other Putative Class members are entitled to damages and monetary relief and, if so, in what amount; and

o.  Whether Defendants continue to unlawfully conceal and misrepresent whether additional vehicles, besides those reported in the media to date, are in fact Class Vehicles.

p.  Whether Defendants' conduct violates the laws as set forth in the causes of action, including but not limited to, the California Legal Remedies Act, California Unfair Competition Law,

California False Advertising Law, the Song-Beverly Act, and any other statutes asserted herein.

73. **Typicality** – The claims of the representative Plaintiffs are typical of the claims of each member of the Class, thus satisfying Fed. R. Civ. P. 23(a)(3). Plaintiffs, like all other members of the Class, have sustained damages arising from Defendant's violations of the laws, as alleged herein. The representative Plaintiffs and the members of the Class were and are similarly or identically harmed by the same unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct engaged in by Defendant. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of all other members of the Class.

74. **Adequacy** – The representative Plaintiffs will fairly and adequately represent and protect the interests of the Class members and have retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation, thus satisfying Fed. R. Civ. P. 23(a)(4). There are no material conflicts between the claims of the representative Plaintiffs and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

75. **Declaratory or Injunctive Relief** – Hyundai and Kia have acted and refused to act on grounds generally applicable to Plaintiffs and members of the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate regarding the Class as a whole. Fed. R. Civ. P. 23(b)(2).

76. **Superiority** – This suit may be maintained as a class action under Fed. R. Civ. P. 23(b)(3), because a class action is superior to any other available means for the fair and efficient adjudication of this dispute and no unusual difficulties are likely to be encountered in its management of this class action. The damages suffered by individual class members are small in comparison to the burden and expense of individually litigating each claim and based on the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for the members of the Class to individually

redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

77. **<u>Ascertainability</u>**: Upon information and belief, the precise number of Class members may be ascertained from Defendants' records and vehicle registration records. Plaintiffs contemplate the eventual issuance of notice to the proposed Class members setting forth the nature of the instant action. Upon information and belief, Class members may be notified of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media, and published notices, in addition to Defendant's own business records.

**V**

**CALIFORNIA LAW APPLIES TO THE CLAIMS
OF THE NATIONWIDE CLASS**

78. California law applies to the nationwide claims because California's interest in this litigation exceeds that of any other state.

79. Defendant Hyundai America is headquartered in Fountain Valley, California and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Hyundai vehicles, including the Hyundai Class Vehicles.

80. Defendant Kia America is headquartered in Irvine, California and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Kia vehicles, including the Kia Class Vehicles.

81.     Hyundai and Kia each maintain their customer relations, engineering, marketing, and warranty departments at their corporate headquarters in this judicial district. Hyundai and Kia's customer relations department are accountable for discovering customer complaints and monitoring those complaints posted to their respective websites and/or third-party websites.

82.     Hyundai and Kia's warranty and engineering departments are both responsible for decisions to conceal the Engine Defect from their respective customers.

83.     Based on the foregoing, such policies, practices, acts, and omissions giving rise to the Engine Defect and remedies addressing the defect were developed in, and emanated from, Defendants' headquarters in this judicial district in California. As detailed below, Hyundai and Kia knew or should have known about the Engine Defect through the activities of their divisions and affiliated entities located within California. Accordingly, the State of California has the most significant relationship to this litigation and its law should govern.

# VI

## EQUITABLE TOLLING

### A. All Applicable Statutes of Limitations Were Tolled by Operation of the Discovery Rule.

84.     Plaintiffs and Class members did not, and could not, have discovered through the exercise of reasonable diligence, Hyundai and Kia's deception relating to the Engine Defects alleged herein.

85.     Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence that Hyundai and Kia were concealing the defects alleged herein until the NHTSA recall campaign, which was triggered by an alarming number of consumer complaints and a survey by the Center for Auto Safety, revealing the perilous scheme to the public.

86.     Unless a class member experienced a catastrophic engine failure or fire, Plaintiffs and Class members would have no reason to discover the defects alleged herein,

and even if they did experience such a failure, would have no reason to discover the existence of a widespread defect among other Hyundai and Kia vehicles, or any effort to conceal the defect.

87.     Plaintiffs and Class members therefore did not discover, and did not know of, facts that would lead a reasonable person to suspect that Hyundai and Kia concealed information about defects in the Class Vehicles until shortly before this action was filed.

88.     Thus, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims relating to the Engine Defect in Class Vehicles.

## B. All Applicable Statutes of Limitations Have Been Tolled by Defendants' Fraudulent Concealment.

89.     All applicable statutes of limitation have also been tolled by way of Defendants' knowing and ongoing fraudulent concealment of the facts alleged herein.

90.     Defendants concealed the defects, minimized the cause, effects, and dangers of the defects, and failed to disclose or sufficiently remedy the defects. Even now, with NHTSA recalls pending, Defendants offer a repair that is almost certainly inadequate for one defect. As to another, Defendants do not even to know the cause of the defect—a defect that has existed for at least nine years and is, purportedly, to be fixed by a recall that fails to identify any available repair.

91.     Plaintiffs also suffered, and continue to suffer, damages as a result of the inadequate and dangerous recall repairs that were performed on certain Class Vehicles.

92.     Ultimately, Hyundai and Kia actively concealed the true character, quality, and nature of the Class Vehicles.

## C. Estoppel

93.     Hyundai and Kia were, and currently are, under a continuous duty to disclose the true character, quality, and nature of the Class Vehicles, including any vehicle defects as alleged herein, and the inevitable repairs, replacements, expenses, time, and monetary damages resulting therefrom.

94.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VII

## CLAIMS FOR RELIEF

95.     Plaintiffs bring each of the following claims on behalf of themselves and the Nationwide Class against Defendants. Alternatively, Plaintiffs bring these claims on behalf of themselves and the Individual State Classes against Defendants.

## COUNT I
### Violation of California Consumer Legal Remedies Act
### (Cal. Civ. Code § 1750 *et seq.*)

96.     Plaintiffs incorporate by reference and re-allege all paragraphs previously stated herein.

97.     The following definitions come within the meaning of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*):

    a.     The members of the Class, all of whom purchased the subject vehicles manufactured and sold by Hyundai and Kia are "consumers" (Cal. Civ. Code § 1761(d));

    b.     Defendants Hyundai and Kia are a "persons" (Cal. Civ. Code § 1761(c));

    c.     Plaintiffs' and every Class members' purchase of the subject vehicle constitute a "transaction" (Cal. Civ. Code § 1761(e)); and

    d.     The subject vehicles are "goods" (Cal. Civ. Code § 1761 (a)).

98.     The acts and practices of Hyundai and Kia, as discussed throughout this Complaint, constitute "unfair or deceptive acts or practices" that are unlawful, as enumerated in section 1770(a) of the California Civil Code.

99.    The Unfair Business Practices Act defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.  The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

100.    Such misconduct materially affected the purchasing decisions of Plaintiffs and the Class members.

101.    Plaintiffs seek restitution and injunctive relief pursuant to California Civil Code § 1780

102.    Plaintiffs and Class members have been damaged by said practices.  Pursuant to California Business and Professions Code § 1750, Plaintiffs, on behalf of themselves and all others similarly situated, seek relief as prayed for below.

**COUNT II**
**Violation of California False Advertising Law**
**(Cal. Bus. & Prof. Code §  17500, *et seq*.)**

103.    Plaintiffs incorporate by reference and re-allege all paragraphs previously stated herein.

104.    California Business & Professions Code § 17500 states: "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

105.    Defendants caused to be made or disseminated through California and the United States—through advertising, marketing and other publications—statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiffs and the Class members.

106.  Defendants violated section 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of their Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

107.  Plaintiffs and Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiffs and the Class members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of the Class Vehicles. Defendants' representations and/or omissions were untrue because the Class Vehicles are distributed with a defective engine. Had Plaintiffs and the Class members known this, they would not have purchased or leased their Class Vehicles, or they would not have paid as much for the Class Vehicles. Accordingly, Plaintiffs and the Class members overpaid for their Class Vehicles, were greatly inconvenienced by the undisclosed defects, and did not receive the benefit of their bargain.

108.  All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, in the states of California, Florida, Georgia, Indiana, Iowa, Louisiana, Massachusetts, New Jersey, New Mexico, New York, North Carolina, Tennessee, Texas  and nationwide.

109.  Plaintiffs, individually and on behalf of the Class members, request that this Court enter such orders or judgments as necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and the Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief permitted.

### COUNT III
### Violation of California Unfair Competition Law Section 17200
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

110.  Plaintiffs incorporate by reference and re-allege all paragraphs previously stated herein.

111.   Plaintiffs assert this claim on behalf of themselves and of themselves and on behalf of all persons and entities who purchased or leased a Class Vehicle. Alternatively, Plaintiffs bring this claim on behalf of themselves and the State Classes against Hyundai and Kia.

112.   The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

113.   Hyundai and Kia engaged in unfair competition and unfair, unlawful or fraudulent business practices through the conduct, statements, and omissions described herein, and by knowingly and intentionally concealing the Engine Defect in Class Vehicles from Plaintiffs and Class members. This is in addition to Hyundai and Kia concealing the risks, costs, monetary damage, and costly inconveniences resulting from the Engine Defect. Hyundai and Kia had a duty to disclose this information based on their superior position to know the true facts related to the Engine Defect, compared to that of Plaintiffs and the Class, who could not reasonably be expected to discover or learn the true facts related to the Engine Defect.

114.   The Engine Defect triggering inadequate engine oil lubrication that results in catastrophic engine failure, damage, and engine fires in the Class Vehicles constitutes a valid safety concern that triggered Defendants' duty to disclose the issue to consumers.

115.   Hyundai and Kia's acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the Engine Defect and concealing material facts relevant to Class Vehicles from Plaintiffs and Class members, Hyundai and Kia breached their duty to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and Class members. Defendants' omissions and concealment pertain to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

116.    Plaintiffs and Class members injuries are in no way greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are these injuries such that Plaintiffs or Class members should have reasonably avoided them.

117.    Defendants' acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750, et seq., and California Commercial Code § 2313.

118.    Plaintiffs seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200.

**COUNT IV**
**Violation of the Song-Beverly Act–**
**Breach of Implied Warranty**
**(Cal. Civ. Code § 1791, *et seq*.)**

119.    Plaintiffs incorporate by reference and re-allege all paragraphs previously stated herein.

120.    Plaintiffs bring this claim on behalf of themselves and the Nationwide Class against Hyundai and Kia. Alternatively, Plaintiffs bring this claim on behalf of themselves and the State Classes against Hyundai and Kia.

121.    The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

122.    Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1) Pass without objection in the trade under the contract description.

(2) Are fit for the ordinary purposes for which such goods are used.

(3) Are adequately contained, packaged, and labeled.

(4) Conform to the promises or affirmations of fact made on the container or label.

123. At all relevant times hereto, Hyundai and Kia were the manufacturers, distributors, warrantors, and/or sellers of the Class Vehicles. Hyundai and Kia knew or should have known the specific use for which the Class Vehicles were purchased.

124. Hyundai and Kia provided Plaintiffs and Class members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold. The Class Vehicles, however, are not fit for their ordinary purpose because, inter alia, the Class Vehicles and their engines contained an inherent defect at the time of sale that causes the Class Vehicles to experience premature and catastrophic engine failure and fire.

125. The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the Engine Defect.

126. Hyundai and Kia impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use. This implied warranty included, inter alia, the following: (i) a warranty that the Class Vehicles and engines manufactured, supplied, distributed, and/or sold by Hyundai and Kia were safe and reliable for providing transportation and would not prematurely and catastrophically fail or catch fire; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use – providing safe and reliable transportation – while the Class Vehicles were being operated.

127. Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale, and thereafter, were not fit for their ordinary and intended purpose. Instead, the Class Vehicles are defective, including, but not limited to, the Engine Defect and/or manufacturing and widespread installation of the GDI engines.

128. Hyundai and Kia's actions, as described herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

129.  Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs are entitled to damages and other legal and equitable relief including, but not limited to the purchase price of the Class Vehicles or the overpayment or diminution in value of the Class Vehicles, and attorney fees and costs.

## COUNT V
## Violation of Florida Deceptive and Unfair Trade Practices Act
### (Florida Statute § 501.201, *et seq.*)

130.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

131.  This claim is brought only on behalf of Plaintiffs Greg Cohen and LaToya Taylor and the entire Florida State Class against Hyundai and Kia.

132.  Plaintiffs Greg Cohen and LaToya Taylor are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. §501.203(7).

133.  Hyundai and Kia are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

134.  FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1). Hyundai and Kia engaged in unfair and deceptive trade practices, as described herein, that violated the FDUTPA.

135.  In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers posed by the Engine Defect in Class Vehicles, as described herein, and otherwise engaged in activities with a tendency or capacity to deceive.

136.  Hyundai and Kia also engaged in unlawful trade practices by employing deceptive acts or practices, misrepresentation or concealment, suppression, or omission of any material fact, with intent that consumers rely upon such, in connection with the sale of the Class Vehicles.

137.   By failing to disclose and by actively concealing the Engine Defect in the Class Vehicles, Hyundai and Kia engaged in unfair or deceptive business practices in violation of the FDUTPA.

138.   To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, sudden engine stalls while in motion, premature engine wear, and a variety of other complications, instead of addressing the Defect to ensure the safety of the Class Vehicles and consumers and vehicle occupants.

139.   Defendants' misrepresentations and fraudulent omissions were material to Plaintiffs Greg Cohen and LaToya Taylor, and the Florida State Class. When Plaintiffs Cohen and Taylor, and members of the Florida State Class purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had Defendants disclosed the Engine Defect, Plaintiffs Cohen and Taylor, and members of the Florida State Class, would not have purchased or leased the Class Vehicles, or would have paid less for them.

140.   As alleged above, Defendants knowingly concealed, suppressed and/or omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

141.   Defendants knew or should have known that their conduct violated the FUDTPA.

142.   Defendants each owed Plaintiffs and the Florida Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective recall repairs. The information surrounding the risks posed by the Engine Defect could not have reasonably been known by consumers.

143.   Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the FDUTPA when they knew or recklessly disregarded the fact that their representations were false, as they were aware of the Engine Defect as early as 2015.

144.   Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the FDUTPA when they failed to disclose to Plaintiffs the existence of an Engine Defect,  that Engine Defect recalls— and repairs resulting therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and catastrophic engine failure.

145.   As a direct and proximate result of the Defendants' violations of the FUDTPA, Plaintiffs and the Florida Class have suffered injury-in-fact and/or actual damage.

146.   Plaintiffs and the Florida Class are entitled to recover their actual damages under Fla. Stat. § 501.211(2), attorneys' fees under Fla. Stat. § 501.2105(1), and all other relief the court deems just and proper under the FUDTPA.

## COUNT VI
## Violation of Georgia Uniform Deceptive Trade Practices Act
### (Georgia Statute § 10-1-370, *et seq.*)

147.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

148.   This claim is brought only on behalf of Plaintiff Margaret Greenwalt and the entire Georgia State Class against Hyundai and Kia.

149.   Plaintiff Margaret Greenwalt and the Georgia State Class are "persons" within the meaning of the Georgia Unfair and Deceptive Practices Act ("GUDTPA"), Ga. Code Ann. §10-1-371(5).

150.   The Georgia UDTPA prohibits "deceptive trade practices," which include the "misrepresentation of standard or quality of goods or services," and "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a).

151.   In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers and associated risks posed by the Engine Defect in Class Vehicles

as described herein and otherwise engaged in activities with a tendency or capacity to deceive in violation of the Georgia UDTPA.

152.  Hyundai and Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations or concealment, suppression or omission of any material fact with intent that consumers rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles, despite their knowledge of the Defect and/or failure to adequately investigate it.

153.  To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, engine stalls while in motion, premature engine wear, and a variety of other complications, instead of addressing the Engine Defect to ensure the safety of the Class Vehicles and consumers and vehicle occupants.

154.  Defendants' misrepresentations and fraudulent omissions were material to Plaintiff Greenwalt, and the Georgia State Class. When Plaintiff Greenwalt, and members of the Georgia State Class purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had Defendants disclosed the Engine Defect, Plaintiff Greenwalt, and members of the Georgia State Class, would not have purchased or leased the Class Vehicles, or would have paid less for them.

155.  As alleged above, Defendants knowingly concealed, suppressed and/or omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

156.  Defendants knew or should have known that their conduct violated the GUDTPA.

157.  Defendants each owed Plaintiff Margaret Greenwalt and the Georgia State Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective recall repairs. The information surrounding the risks posed by the Engine Defect could not have reasonably been known by consumers.

158. Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the GDUTPA when they knew or recklessly disregarded the fact that their representations were false, as they were aware of the Engine Defect as early as 2015.

159. Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the GDUTPA when they failed to disclose to Plaintiffs the existence of an Engine Defect, that Engine Defect recalls— and repairs resulting therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and catastrophic engine failure.

160. As a direct and proximate result of the Defendants' violations of the GUDTPA, Plaintiff Margaret Greenwalt and the Georgia State Class have suffered injury-in-fact and/or actual damage.

161. Plaintiff Greenwalt and members of the Georgia State Class are entitled to an order enjoining Hyundai and Kia's unfair, unlawful, and/or deceptive practices, costs, attorneys' fees, and all other relief the Court deems proper under the Georgia UDTPA per Ga. Code Ann. § 10-1-373.

## COUNT VII
### Violation of Indiana Deceptive Consumer Sales Act
### (Indiana Statute § 24-5-0.5-1 *et seq.*)

162. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

163. This claim is brought only on behalf of Plaintiff Dimitra Bertsos and the entire Indiana State Class against Hyundai and Kia.

164. Hyundai and Kia are engaged in "trade or commerce" and "consumer transactions" within the meaning of Ind. Code Ann. § 24-5-0.5-2.

165. The Indiana Deceptive Consumer Sales Act ("IDCSA") prohibits "[u]nfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code Ann. § 24-5-0.5-3.

166.   In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers and associated risks posed by the Engine Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

167.   Hyundai and Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations or concealment, suppression or omission of any material fact with intent that consumers rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

168.   By failing to disclose and by actively concealing the Engine Defect in the Class Vehicles, Hyundai and Kia engaged in unfair or deceptive business practices in violation of the IDCSA.

169.   To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, sudden engine stalls while in motion, premature engine wear, and a variety of other complications, instead of addressing the Engine Defect to ensure the safety of the Class Vehicles and consumers and vehicle occupants.

170.   Defendants' misrepresentations and fraudulent omissions were material to Plaintiff Dimitra Bertsos, and the Indiana State Class. When Plaintiff Bertsos, and members of the Indiana State Class purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had Defendants disclosed the Engine Defect, Plaintiff, and members of the Indiana State Class, would not have purchased or leased the Class Vehicles, or would have paid less for them.

171.   As alleged above, Defendants knowingly concealed, suppressed and/or omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

172.   Defendants knew or should have known that their conduct violated the IDCSA.

173.  Defendants each owed Plaintiff and the Indiana Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective recall repairs. The information surrounding the risks posed by the Engine Defect could not have reasonably been known by consumers.

174.  Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the IDCSA when they knew or recklessly disregarded the fact that their representations were false, as they were aware of the Engine Defect as early as 2015.

175.  Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the IDCSA when they failed to disclose to Plaintiff the existence of an Engine Defect,  that Engine Defect recalls— and repairs resulting therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and catastrophic engine failure.

176.  As a direct and proximate result of the Defendants' violations of the IDCSA, Plaintiffs and the Indiana State Class have suffered injury-in-fact and/or actual damage.

177.  Plaintiffs and the Indiana Class are entitled to recover their actual damages and  attorneys' fees under of Ind. Code Ann. § 24-5-0.5-4 and all other relief the court deems just and proper  under the IDCSA.

## COUNT VIII
### Violation of Iowa Private Right of Action for Consumer Frauds Act
### (Iowa Code Ann. § 714H.1, *et seq.*)

178.  Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

179.  This claim is brought only on behalf of Plaintiff Jerry Stanwick and the entire Iowa State Class against Hyundai and Kia.

180.  Plaintiff  Jerry Stanwick and the Iowa Consumer State Class are "consumers," as defined by Iowa Code § 714H.2(3).

181.   The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3.

182.   In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers and associated risks posed by the Engine Defect in Class Vehicles, as described herein, and otherwise engaged in activities with a tendency or capacity to deceive in violation of the Iowa CFA

183.   Hyundai and Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations or concealment, suppression or omission of any material fact with intent that consumers rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

184.   By failing to disclose and by actively concealing the Engine Defect in the Class Vehicles, Hyundai and Kia engaged in unfair or deceptive business practices in violation of the Iowa CFA.

185.   To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, sudden engine stalls while in motion, premature engine wear, and a variety of other complications, instead of addressing the Defect to ensure the safety of the Class Vehicles and consumers and vehicle occupants.

186.   Defendants' misrepresentations and fraudulent omissions were material to Plaintiff Stanwick, and the Iowa State Class. When Plaintiff Stanwick, and members of the Iowa State Class purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had

Defendants disclosed the Engine Defect, Plaintiff, and members of the Iowa State Class, would not have purchased or leased the Class Vehicles, or would have paid less for them.

187. As alleged above, Defendants knowingly concealed, suppressed and/or omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

188. Defendants knew or should have known that their conduct violated the Iowa CFA.

189. Defendants owed Plaintiff and the Iowa Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective recall repairs. The information surrounding the risks posed by the Engine Defect could not have reasonably been known by consumers.

190. Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the Iowa CFA when they knew or recklessly disregarded the fact that their representations were false, as they were aware of the Engine Defect as early as 2015.

191. Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the Iowa CFA when they failed to disclose to Plaintiff the existence of an Engine Defect, that Engine Defect recalls— and repairs resulting therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and catastrophic engine failure.

192. As a direct and proximate result of the Defendants' violations of the Iowa CFA, Plaintiff and the Iowa State Class have suffered injury-in-fact and/or actual damage.

193. Plaintiffs and the Iowa State Class are entitled to recover their actual damages, treble damages for Defendants' knowing violations of the Iowa CFA; and attorney's fees under Iowa Code Ann. § 714H.5, and all other relief the court deems just and proper under the Iowa CFA.

# COUNT IX
## Violation of Louisiana Unfair Trade Practices and Consumer Protection Law
### (Louisiana Statute § 51:1401, *et seq.*)

194.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

195.    This claim is brought only on behalf of Plaintiff Stephanie Cooper and the entire Louisiana State Class against Hyundai and Kia.

196.    Plaintiff Stephanie Cooper and the Louisiana State Class are "persons" within the meaning of La. Rev. Stat. § 51:1402(8).

197.    Plaintiff Cooper and the Louisiana Consumer State Class are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1).

198.    Hyundai and Kia engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(9).

199.    The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A).

200.    In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers and associated risks posed by the Engine Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

201.    Hyundai and Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations or concealment, suppression or omission of any material fact with intent that consumers rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles, despite their knowledge of the Defect and/or failure to adequately investigate it.

202.    To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, engine stalls while in motion, premature engine

1  wear, and a variety of other complications, instead of addressing the Engine Defect to
2  ensure the safety of the Class Vehicles and consumers and vehicle occupants.

3      203.   Defendants' misrepresentations and fraudulent omissions were material to
4  Plaintiff Cooper, and the Louisiana State Class. When Plaintiff Cooper, and members of
5  the Louisiana State Class purchased or leased their Class Vehicles, they reasonably relied
6  on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had
7  Defendants disclosed the Engine Defect, Plaintiff Cooper, and members of the Louisiana
8  State Class, would not have purchased or leased the Class Vehicles, or would have paid
9  less for them.

10     204.   As alleged above, Defendants knowingly concealed, suppressed and/or
11 omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease
12 and at all relevant times thereafter.

13     205.   Defendants knew or should have known that their conduct violated the
14 Louisiana CPL.

15     206.   Defendants each owed Plaintiff Stephanie Cooper and the Louisiana State
16 Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective
17 recall repairs. The information surrounding the risks posed by the Engine Defect could not
18 have reasonably been known by consumers.

19     207.   Defendants engaged in unconscionable, unfair, and deceptive trade practices
20 as defined and construed under the Louisiana CPL when they knew or recklessly
21 disregarded the fact that their representations were false, as they were aware of the Engine
22 Defect as early as 2015.

23     208.   Defendants engaged in unconscionable, unfair, and deceptive trade practices
24 as defined and construed under the Louisiana CPL when they failed to disclose to Plaintiffs
25 the existence of an Engine Defect,  that Engine Defect recalls— and repairs resulting
26 therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and
27 catastrophic engine failure.

28

CLASS ACTION COMPLAINT

209.   As a direct and proximate result of the Defendants' violations of the Louisiana CPL, Plaintiff Cooper and the Louisiana State Class have suffered injury-in-fact and/or actual damage.

210.   Plaintiff Stephanie Cooper and members of the Louisiana State Class are entitled to recover their actual damages in an amount to be determined at trial, treble damages for Hyundai and Kia's knowing violations of the Louisiana CPL, an order enjoining Hyundai and Kia's unfair, unlawful, and/or deceptive practices, declaratory relief, costs,  attorneys' fees, and any other relief the Court deems proper  under La. Rev. Stat. § 51:1409.

**COUNT X**
**Violation of Massachusetts Deceptive Practices Act**
**(Mass. Gen. Laws Ann. ch. 93A, § 1, et seq.*et seq.*)**

211.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

212.   This claim is brought only on behalf of Plaintiff Chris Hazelwood and the entire Massachusetts State Class against Hyundai and Kia.

213.   Plaintiff Chris Hazelwood and the Massachusetts State Class are "persons" within the meaning of the Massachusetts Deceptive Practices Act (MDPA,  Mass. Gen. Laws ch. 93A, § 1(a).

214.   Hyundai and Kia engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws 93A, § 1(b).

215.   The MDPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Defendants both engaged in deceptive acts that violated the MDPA.

216.    By failing to disclose and actively concealing the dangers and risks posed by the Engine Defect, Defendants engaged in deceptive business practices prohibited by Massachusetts law. In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers and associated risks posed by the Engine Defect in Class

Vehicles, as described herein, and otherwise engaged in activities with a tendency or capacity to deceive.

217. Hyundai and Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations or concealment, suppression or omission of any material fact with intent that consumers rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles, despite their knowledge of the Defect and/or failure to adequately investigate it.

218. To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, engine stalls while in motion, premature engine wear, and a variety of other complications, instead of addressing the Engine Defect to ensure the safety of the Class Vehicles and consumers and vehicle occupants.

219. Defendants' misrepresentations and fraudulent omissions were material to Plaintiff Hazelwood, and the Massachusetts State Class. When Plaintiff Hazelwood, and members of the Massachusetts State Class purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had Defendants disclosed the Engine Defect, Plaintiff Hazelwood, and members of the Massachusetts State Class, would not have purchased or leased the Class Vehicles, or would have paid less for them.

220. As alleged above, Defendants knowingly concealed, suppressed and/or omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

221. Defendants knew or should have known that their conduct violated the MDPA.

222. Defendants each owed Plaintiff Hazelwood and the Massachusetts State Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective recall repairs. The information surrounding the risks posed by the Engine Defect could not have reasonably been known by consumers.

223.    Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under Massachusetts law when they knew or recklessly disregarded the fact that their representations were false, as they were aware of the Engine Defect as early as 2015.

224.    Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under Massachusetts law when they failed to disclose to Plaintiffs the existence of an Engine Defect,  that Engine Defect recalls— and repairs resulting therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and catastrophic engine failure.

225.    As a direct and proximate result of the Defendants' violations of the MDPA, Plaintiff Chris Hazelwood and the Massachusetts State Class have suffered injury-in-fact and/or actual damage.

226.    Plaintiff Chris Hazelwood and members of the Massachusetts State Class are entitled to recover monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each Plaintiff and each Massachusetts State Class member. Because Defendants' conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff and each Massachusetts State Class member, up to three times actual damages, but no less than two times actual damages. Mass. Gen. Laws ch. 93A, § 9,

227.    Plaintiffs also seek an order enjoining Hyundai and Kia's unfair, unlawful, and/or deceptive practices, declaratory relief, costs,  attorneys' fees, and any other relief the Court deems proper  under MDPA.

## COUNT XI
### Violation of New Jersey Consumer Fraud Act
### (N.J. Stat. Ann. § 56:8-1, *et seq*.)

228.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

229.   This claim is brought only on behalf of Plaintiff David Feuerstein and the entire New Jersey State Class against Hyundai and Kia.

230.   Plaintiff Feuerstein and the New Jersey State Class are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

231.   Plaintiff Feuerstein and the New Jersey State Class are "consumers" within the meaning of the N.J. Stat. Ann. § 56:8-1(c), (d).

232.   Hyundai and Kia engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

233.   The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby…" N.J. Stat. Ann. § 56:8-2.

234.   In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers and associated risks posed by the Engine Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive, in violation of the New Jersey CFA.

235.   Hyundai and Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations or concealment, suppression or omission of any material fact with intent that consumers rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles, despite their knowledge of the Defect and/or failure to adequately investigate it.

236.   To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, engine stalls while in motion, premature engine

wear, and a variety of other complications, instead of addressing the Engine Defect to ensure the safety of the Class Vehicles and consumers and vehicle occupants.

237. Defendants' misrepresentations and fraudulent omissions were material to Plaintiff David Feuerstein, and the New Jersey State Class. When Plaintiff Feuerstein, and members of the New Jersey State Class purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had Defendants disclosed the Engine Defect, Plaintiff Feuerstein, and members of the New Jersey State Class, would not have purchased or leased the Class Vehicles, or would have paid less for them.

238. As alleged above, Defendants knowingly concealed, suppressed and/or omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

239. Defendants knew or should have known that their conduct violated the New Jersey CFA.

240. Defendants each owed Plaintiff David Feuerstein and the New Jersey State Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective recall repairs. The information surrounding the risks posed by the Engine Defect could not have reasonably been known by consumers.

241. Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the New Jersey CFA when they knew or recklessly disregarded the fact that their representations were false, as they were aware of the Engine Defect as early as 2015.

242. Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the New Jersey CFA when they failed to disclose to Plaintiffs the existence of an Engine Defect, that Engine Defect recalls— and repairs resulting therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and catastrophic engine failure.

243.   As a direct and proximate result of the Defendants' violations of the New Jersey CFA, Plaintiff David Feuerstein and the New Jersey State Class have suffered injury-in-fact and/or actual damage.

244.   Plaintiff David Feuerstein and members of the New Jersey State Class are entitled to recover legal and/or equitable relief including actual damages, an order enjoining Hyundai and Kia's unlawful conduct, treble damages, costs, and reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8- 19, and any other relief the Court deems proper.

## COUNT XII
### Violation of New Mexico Unfair Practices Act
### (N.M. Stat. Ann. § 57-12-1 *et seq.*)

245.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

246.   This claim is brought only on behalf of Plaintiff Fabian Conant and the entire New Mexico State Class against Hyundai and Kia.

247.   Hyundai and Kia are engaged in "trade or commerce" within the meaning of N.M. Stat. §57-12-2.

248.   The New Mexico Unfair Practices Act ("NMUPA") prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful.   ." N.M. Stat. § 57-12-3.

249.   In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers and associated risks posed by the Engine Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

250.   Hyundai and Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations or concealment, suppression or omission of any material fact with intent that consumers rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

251. By failing to disclose and by actively concealing the Engine Defect in the Class Vehicles, Hyundai and Kia engaged in unfair or deceptive business practices in violation of the NMUPA.

252. To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, sudden engine stalls while in motion, premature engine wear, and a variety of other complications, instead of addressing the Engine Defect to ensure the safety of the Class Vehicles and consumers and vehicle occupants.

253. Defendants' misrepresentations and fraudulent omissions were material to Plaintiff Fabian Conant, and the New Mexico State Class. When Plaintiff Conant, and members of the New Mexico State Class purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had Defendants disclosed the Engine Defect, Plaintiff, and members of the New Mexico State Class, would not have purchased or leased the Class Vehicles, or would have paid less for them.

254. As alleged above, Defendants knowingly concealed, suppressed and/or omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

255. Defendants knew or should have known that their conduct violated the NMUPA.

256. Defendants each owed Plaintiff and the New Mexico Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective recall repairs. The information surrounding the risks posed by the Engine Defect could not have reasonably been known by consumers.

257. Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the NMUPA when they knew or recklessly disregarded the fact that their representations were false, as they were aware of the Engine Defect as early as 2015.

CLASS ACTION COMPLAINT

258.   Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the NMUPA when they failed to disclose to Plaintiff the existence of an Engine Defect,  that Engine Defect recalls— and repairs resulting therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and catastrophic engine failure.

259.   As a direct and proximate result of the Defendants' violations of the NMUPA, Plaintiff Conant and the New Mexico State Class have suffered injury-in-fact and/or actual damage.

260.   Plaintiff Conant and the New Mexico Class are entitled to recover their actual damages and  attorneys' fees under of N.M. Stat. Ann. § 57-12-10 and all other relief the court deems just and proper  under the NMUPA.

## COUNT XIII
### Violation of New York General Business Law
### (N.Y. Gen. Bus. Law § 349)

261.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

262.   This claim is brought only on behalf of Plaintiffs Wayne Robertson and Jonathan Wilson and the entire New York State Class against Hyundai and Kia.

263.   Plaintiffs Robertson and Wilson and the New York State Class are "persons" within the meaning of New York General Business Law ("New York GBL"), N.Y. Gen. Bus. Law § 349(h).

264.   Hyundai and Kia are each a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

265.   The New York GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349. Hyundai and Kia's conduct directed toward consumers, as described above and below, constitutes "deceptive acts or practices" within the meaning of the New York GBL.

266.   Hyundai and Kia's actions, as set forth above, occurred in the conduct of trade or commerce.

267.   In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers and associated risks posed by the Engine Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

268.   Hyundai and Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations or concealment, suppression or omission of any material fact with intent that consumers rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles, despite their knowledge of the Defect and/or failure to adequately investigate it.

269.   To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, engine stalls while in motion, premature engine wear, and a variety of other complications, instead of addressing the Engine Defect to ensure the safety of the Class Vehicles and consumers and vehicle occupants.

270.   Defendants' misrepresentations and fraudulent omissions were material to Plaintiffs Robertson and Wilson, and the New York State Class. When Plaintiffs Robertson and Wilson, and members of the New York State Class purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had Defendants disclosed the Engine Defect, Plaintiffs Robertson and Wilson, and members of the New York State Class, would not have purchased or leased the Class Vehicles, or would have paid less for them.

271.   As alleged above, Defendants knowingly concealed, suppressed and/or omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

272.   Defendants knew or should have known that their conduct violated the New York GBL.

273. Defendants each owed Plaintiffs Robertson and Wilson and the New York State Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective recall repairs. The information surrounding the risks posed by the Engine Defect could not have reasonably been known by consumers.

274. Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the New York GBL when they knew or recklessly disregarded the fact that their representations were false, as they were aware of the Engine Defect as early as 2015.

275. Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the New York GBL when they failed to disclose to Plaintiffs the existence of an Engine Defect, that Engine Defect recalls— and repairs resulting therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and catastrophic engine failure.

276. As a direct and proximate result of the Defendants' violations of the New York GBL, Plaintiffs Robertson and Wilson and the New York State Class have suffered injury-in-fact and/or actual damage.

277. Plaintiffs Robertson and Wilson and the New York State Class members seek punitive damages against Defendants because their conduct was egregious. Hyundai and Kia concealed the Engine Defect in Class Vehicles, deceived the Plaintiffs and the New York State Class on material matters, and concealed material facts that only Hyundai and Kia knew, all to avoid the expense and public relations nightmare of correcting the serious flaw in thousands of the Class Vehicles. Hyundai and Kia's egregious conduct warrants punitive damages.

278. As a result of the foregoing wrongful conduct of Hyundai and Kia, Plaintiff Plaintiffs Robertson and Wilson and members of the New York State Class are entitled to seek recovery of actual damages, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, an order enjoining Hyundai and Kia's

deceptive conduct, and any other relief the Court deems proper under N.Y. Gen. Bus. Laws § 349.09.

## COUNT XIV
### Violation of North Carolina Deceptive and Unfair Trade Practices Act
### (N.C. Gen. Stat. § 75-1.1, *et seq.*)

279. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

280. This claim is brought only on behalf of Plaintiffs Gary Bolduc and Tanesha Cherry and the entire North Carolina State Class against Hyundai and Kia.

281. Hyundai and Kia engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75- 1.1(b).

282. The North Carolina Act broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a).

283. In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers and associated risks posed by the Engine Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

284. Hyundai and Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations or concealment, suppression or omission of any material fact with intent that consumers rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

285. By failing to disclose and by actively concealing the Engine Defect in the Class Vehicles, Hyundai and Kia engaged in unfair or deceptive business practices in violation of N.C. Gen. Stat. § 75-1.1(a).

286. To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, sudden engine stalls while in motion, premature

engine wear, and a variety of other complications, instead of addressing the Defect to ensure the safety of the Class Vehicles and consumers and vehicle occupants.

287. Defendants' misrepresentations and fraudulent omissions were material to Plaintiffs Gary Bolduc and Tanesha Cherry, and the North Carolina State Class. When Plaintiffs Bolduc and Cherry, and members of the North Carolina State Class purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had Defendants disclosed the Engine Defect, Plaintiffs Bolduc and Cherry, and members of the North Carolina State Class, would not have purchased or leased the Class Vehicles, or would have paid less for them.

288. As alleged above, Defendants knowingly concealed, suppressed and/or omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

289. Defendants knew or should have known that their conduct violated N.C. Gen. Stat. § 75- 1.1

290. Defendants each owed Plaintiffs and the North Carolina Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective recall repairs. The information surrounding the risks posed by the Engine Defect could not have reasonably been known by consumers.

291. Defendants engaged in unfair, and deceptive trade practices as defined and construed under N.C. Gen. Stat. § 75- 1.1 when they knew or recklessly disregarded the fact that their representations were false, as they were aware of the Engine Defect as early as 2015.

292. Defendants engaged in unfair, and deceptive trade practices, as defined and construed under N.C. Gen. Stat. § 75-1.1(a), when they failed to disclose to Plaintiffs the existence of an Engine Defect,  that Engine Defect recalls— and repairs resulting therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and catastrophic engine failure.

293.   As a direct and proximate result of the Defendants' violations of N.C. Gen. Stat. § 75-1.1, *et seq*., Plaintiffs Gary Bolduc and Tanesha Cherry and the North Carolina Class have suffered injury-in-fact and/or actual damage.

294.   Plaintiffs Gary Bolduc and Tanesha Cherry and North Carolina State Class members seek punitive damages against Hyundai and Kia because Hyundai and Kia's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

295.   Hyundai and Kia fraudulently and willfully misrepresented the safety and reliability of the Class Vehicles, deceived North Carolina State Class members on dangerous and material matters, and concealed material facts that only they knew, all to avoid the expense and public relations nightmare of correcting the myriad flaws in the Class Vehicles. Because Hyundai and Kia's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith, it warrants punitive damages.

296.   Plaintiffs Gary Bolduc and Tanesha Cherry and North Carolina State Class members are entitled to recover actual damages in an amount to be determined at trial, treble damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina Act, N.C. Gen. Stat. § 75-16.

## COUNT XV
### Violation of Tennessee Consumer Protection Act,
### (Tenn. Code Ann. § 47-18-101, *et seq*.)

297.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

298.   This claim is brought only on behalf of Plaintiff Latonya Franklin, Plain tiff Wendy Moore and the entire Tennessee State Class against Hyundai and Kia.

299.   Plaintiffs Latonya Franklin and Wendy Moore and the Tennessee State Class are "consumers" within the meaning of the  Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-103(2).

300.  Hyundai and Kia are engaged in "trade," "commerce" or "consumer transactions" within the meaning of Tenn. Code Ann. § 47-18-103(19).

301.  The Tennessee CPA prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce," including but not limited to: "[r]epresenting that goods or services have . . . characteristics, [or] . . . benefits . . . that they do not have. . .;" "[r]epresenting that goods or services are of a particular standard, quality or grade . . . if they are of another;" and "[a]dvertising goods or services with intent not to sell them as advertised." Tenn. Code Ann. § 47-18-104.

302.  In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers and associated risks posed by the Engine Defect in Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

303.  Hyundai and Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations or concealment, suppression or omission of any material fact with intent that consumers rely upon such concealment, suppression or omission, in connection with failing to disclose and actively concealing the Engine Defect in the Class Vehicles.

304.  To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, sudden engine stalls while in motion, premature engine wear, and a variety of other complications, instead of addressing the Defect to ensure the safety of the Class Vehicles and consumers and vehicle occupants.

305.  Defendants' misrepresentations and fraudulent omissions were material to Plaintiff Franklin, Plaintiff Moore and the Tennessee State Class. When Plaintiffs Franklin and Moore, and members of Tennessee State Class purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had Defendants disclosed the Engine Defect, Plaintiffs Franklin and Moore and members of the Tennessee Subclass, would not have purchased or leased the Class Vehicles, or would have paid less for them.

306.   As alleged above, Defendants knowingly concealed, suppressed and/or omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

307.   Defendants knew or should have known that their conduct violated the TCPA.

308.   Defendants each owed Plaintiffs Franklin and Moore and the Tennessee Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective recall repairs. The information surrounding the risks posed by the Engine Defect could not have reasonably been known by consumers.

309.   Defendants engaged in unfair, and deceptive trade practices as defined and construed under the TCPA when they knew or recklessly disregarded the fact that their representations were false, as they were aware of the Engine Defect as early as 2015.

310.   Defendants engaged in unfair, and deceptive trade practices as defined and construed under the TCPA when they failed to disclose to Plaintiffs Franklin and Moore the existence of an Engine Defect, that Engine Defect recalls— and repairs resulting therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and catastrophic engine failure.

311.   As a direct and proximate result of the Defendants' violations of the TCPA, Plaintiff Franklin and the Tennessee Class have suffered injury-in-fact and/or actual damage.

312.   Plaintiffs Latonya Franklin and Wendy Moore, and the Tennessee State Class, are entitled to recover their actual damages in an amount to be determined at trial, treble damages as a result of Defendants' willful or knowing violations under Tenn. Code §47-18-109(a)(3), attorneys' fees under Tenn. Code §47-18-109(e), and all other relief the court deems just and proper  under the TCPA.

## COUNT XVI
## Violation of Texas Deceptive Trade Practices Act
### (Tex. Bus. & Com. Code § 17.41, *et seq*.)

313.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

314.   This claim is brought only on behalf of Plaintiffs Samantha Bitely and Tasha Gill and the entire Texas State Class against Hyundai and Kia.

315.   Plaintiffs Samantha Bitely and Tasha Gill "are individuals, partnerships and corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets)" within the meaning of Tex. Bus. & Com. Code § 17.41.

316.   The Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5); Tex. Bus. & Com. Code § 17.50(a)(3).

317.   By failing to disclose and actively concealing the dangers and risks posed by the Engine Defect, Hyundai and Kia engaged in deceptive business practices prohibited by the TDTPA, including: representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that they are of a particular standard, quality, and grade when they are not; advertising them with the intent not to sell or lease them as advertised; and engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding

318.   In the course of their business, Hyundai and Kia failed to disclose and actively concealed the dangers and associated risks posed by the Engine Defect in Class Vehicles

as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

319. Hyundai and Kia also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations or concealment, suppression or omission of any material fact with intent that consumers rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

320. By failing to disclose and by actively concealing the Defect in the Class Vehicles, by marketing the Class Vehicles as safe, reliable, and of high quality, and by presenting itself as reputable manufacturers that value safety, Hyundai and Kia engaged in unfair or deceptive business practices in violation of the TDTPA. To ensure that consumers would purchase and lease the Class Vehicles, Hyundai and Kia deliberately withheld information about the propensity of the Engine Defect to cause spontaneous engine fires, sudden engine stalls while in motion, premature engine wear, and a variety of other complications, instead of addressing the Defect to ensure the safety of the Class Vehicles and consumers and vehicle occupants.

321. Defendants' misrepresentations and omissions were material to Plaintiffs Samantha Bitely and Tasha Gill, and the Texas State Class. When Plaintiffs Samantha and Gill and members of the Texas State Class purchased or leased their Class Vehicles, they reasonably relied on the expectation that the Class Vehicles would not pose an unavoidable safety risk. Had Defendants disclosed the Engine Defect, Plaintiffs, and members of the Texas State Class, would not have purchased or leased the Class Vehicles, or would have paid less for them. Plaintiffs did not receive the benefit of their bargain as a result of Hyundai and Kia's misconduct

322. As alleged above, Defendants knowingly concealed, suppressed and/or omitted the existence of the Engine Defect in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

323. Defendants knew or should have known that their conduct violated the TDTPA.

324.   Defendants each owed Plaintiffs and the Texas State Class a duty to disclose the dangerous and risky nature of the Engine Defect and ineffective recall repairs. The information surrounding the risks posed by the Engine Defect could not have reasonably been known by consumers.

325.   Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the TDTPA when they knew or recklessly disregarded the fact that their representations were false, as they were aware of the Engine Defect as early as 2015.

326.   Defendants engaged in unconscionable, unfair, and deceptive trade practices as defined and construed under the TDTPA when they failed to disclose to Plaintiffs the existence of an Engine Defect,  that Engine Defect recalls— and repairs resulting therefrom—were wholly inadequate, and Class Vehicles still face a risk of engine fire and catastrophic engine failure.

327.   As a direct and proximate result of the Defendants' violations of the TDTPA, Plaintiffs Bitely and Gill and the Texas Class have suffered injury-in-fact and/or actual damage.

328.   Hyundai and Kia's violations present a continuing risk to the Plaintiffs, the Texas State Class, as well as to the general public. Hyundai and Kia's unlawful acts and practices complained of herein affect the public interest.

329.   Under Tex. Bus. & Com. Code § 17.50(a)(1) and (b), Plaintiffs and the Texas State Class are entitled to recover their actual damages and treble damages for Hyundai and Kia's knowing violations of the TDTPA, costs and attorneys' fees under Tex. Bus. & Com. Code § 17.50(d) and all other relief the court deems just and proper  under the TDTPA.

330.   In accordance with Tex. Bus. & Com. Code § 17.505(a), Plaintiffs' counsel, on behalf of the Plaintiffs Samantha Bitely and Tasha Gill, and the Texas State Class served Hyundai and Kia with notice of their alleged violations of the TDTPA relating to the Class Vehicles purchased by the Plaintiffs and the Texas State Class, and demanded that Hyundai

and Kia correct or agree to correct the actions described therein. If Hyundai and Kia fail to do so, the Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend this Amended Complaint) to include compensatory and monetary damages to which the Plaintiffs and the Texas State Class Members are entitled.

## VIII

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Nationwide and Individual State Classes, demand judgment against Hyundai and Kia as follows:

1. An order certifying the proposed Nationwide and State Classes, as defined herein, and appointing Plaintiffs and their counsel of record to represent the defined Classes;

2. Damages under the aforesaid causes of action for actual, compensatory, general, special, incidental, statutory, punitive, and consequential damages, costs, and disgorgement in an amount to be determined at trial;

3. An order requiring Defendants to pay both pre and post judgment interest on any amounts awarded to the extent allowed by law;

4. An award of reasonable attorney's fees and costs of suit incurred herein;

5. Any further relief as the Court deems appropriate.

## IX

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury for all issues so triable.

**DATED: May 29, 2019.**              **Respectfully submitted,**

            **MCCUNE WRIGHT AREVALO, LLP**

            */s/ Richard D. McCune*
            Richard D. McCune (State Bar No. 132124)

            MCCUNE WRIGHT AREVALO, LLP
            3281 East Guasti Road, Suite 100
            Ontario, CA 91761
            T: (909) 557-1250
            rdm@mccunewright.com

            Derek Y. Brandt (*Pro Hac Vice* to be filed*)*
            Leigh M. Perica (*Pro Hac Vice* to be filed*)*
            MCCUNE WRIGHT AREVALO, LLP
            101 W. Vandalia Street, Suite 200
            Edwardsville, IL 62025
            T: (618) 307-6116
            dyb@mccunewright.com
            lmp@mccunewright.com

            **Attorneys for Plaintiffs**